**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

HEIDY MORALES, *individually and as parent and guardian of J.F., and on behalf of all others similarly situated*,

      Plaintiff,

        v.

KIMBERLY-CLARK CORPORATION,

      Defendant.

---

**Case No.:**

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

## PRELIMINARY STATEMENT

1.    This action seeks redress for Plaintiff HEIDY MORALES ("Plaintiff" or "Plaintiff Morales") individually and as parent and guardian of J.F., for painful rashes to J.F. and financial injury to Plaintiff resulting from the purchase and use of Huggies Snug & Dry Diapers® ("Huggies" or "the Product").  Below is an image of the product:



2.     This action also seeks redress for Plaintiff Morales individually and on behalf of all others similarly situated for deceptive acts and practices in connection with the marketing, advertising, and sale of Huggies, which consumers were led to believe are safe for infants.

3.     Huggies is manufactured by the KIMBERLY-CLARK CORPORATION ("Kimberly-Clark" or "Defendant").   As a result of Defendant's negligent manufacturing

process, Defendant's Product created rashes significant enough to require medical attention and prescription medication for Plaintiff's son J.F..

4.      Accordingly, Plaintiff Morales hereby brings this Class Action Complaint against Defendant, alleging the following violations: (1) violations of New York General Business Law ("N.Y. G.B.L.") § 349 and § 350 (2) breach of implied warranty of merchantability, (3) strict products liability, (4) negligence, and (5) fraudulent misrepresentation.   Plaintiff and Class members seek compensation for damages they incurred and continue to incur as a direct and proximate result of Defendant's unlawful acts and omissions.

5.      The allegations in this Complaint are based on the personal knowledge of Plaintiff as to herself, and on information and belief as to all other matters.


## JURISDICTION AND VENUE

6.      The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (a)(2)(A) because Plaintiff and Defendant are of diverse citizenship and the matter in controversy exceeds seventy-five thousand dollars ($75,000.00) exclusive of interest and costs.

7.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B) whereby: (i) the proposed class consists of over 100 class members, (ii) a member of the putative class is a citizen of a different state than Defendants, and (iii) the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs.

8.      The Court has personal jurisdiction over Defendant because the Product is advertised, marketed, distributed, and sold throughout New York State; Defendant engaged in the wrongdoing alleged in this Complaint throughout the United States, including in New York

State; Defendant is authorized to do business in New York State; and Defendant has sufficient minimum contacts with New York and/or otherwise has intentionally availed itself of the markets in New York State, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant's activity within New York State is substantial and not isolated.

9.      At all relevant times hereto, Defendant was a foreign corporation duly authorized to conduct business in the State of New York.  At all relevant times hereto, Defendant was a non-domiciliary of the State of New York and has committed a tortious act outside the State of New York, causing injury to a person within the State of New York that Defendant should reasonably have foreseen.

10.     Pursuant to 28 U.S.C. § 1391(b)(2), this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of New York.  She resides in this District and purchased the Product in this District. Moreover, Defendant manufactured, distributed, advertised, and sold the Product in this District.

## PARTIES

### *Plaintiff*

11.     Plaintiff Morales is, and at all times relevant hereto has been, a citizen of the State of New York and a resident of Bronx County.  On December 10, 2017 Plaintiff Morales ordered an 18 lbs. box of the Product from Amazon.com for $37.59.  Plaintiff Morales did not put any of the diapers on J.R. until mid-February, however.  Upon first use, J.R. developed painful, plainly visible rashes that required medical attention after they did not go away on their own.  She would not have purchased the Product had she known it was liable to have this effect.

4

12.     Plaintiff would be willing to use Huggies again but cannot do so until such time as Defendant identifies and eliminates the defect in the Products, as she cannot take the risk that her child will once again be injured.

***Defendant***

13.     Defendant Kimberly-Clark Corporation is a global consumer products manufacture organized under the laws of Delaware with its principal place of business at 351 Phelps Dr., Irving, Texas, 75038 and an address for service of process at CT Corporation System, 111 Eighth Avenue, New York, NY 10011.


## FACTUAL ALLEGATIONS

**Background: Defendant's Culture of Reckless Indifference to Infant Health and Safety**

14.     On or about February 11, 2018, Plaintiff Morales opened a new box of Huggies, which she had not used before, and put one on her infant son, J.F.  Upon removing it later in the day, she noticed the following rashes in J.F.'s private areas:



15.     Plaintiff Morales immediately stopped using the still full box of Huggies diapers. But the rash persisted for another four days until she took J.F. to a doctor on February 15, 2018.

16.     The doctor told Plaintiff Morales that the rash was the result of the diaper J.F. was wearing and prescribed Nystatin Cream, which she was directed to apply twice a day for 10 days.

17.     When she initially removed the diaper, Plaintiff Morales noticed blue crystals that were within, but touching the surface of, the Huggies diaper, which she had not noticed when she first put the diaper on J.F.

**Plaintiff's Morales's Experience is not Unique**

18.     Plaintiff Morales' experience with Huggies is far from unique.   Below is a sampling of complaints on circleofmoms.com[1]:

> My little girl got SUCH a bad rash while I was using Huggies diapers. Her skin in that area looked like it was peeling, cracked, and bleeding. It was horrible and I kept blaming myself for it. Maybe I wasn't changing her often enough? Not enough cream/powder? I didn't get it.  Then I spoke with a friend who told me that she knew someone with the same problem with her little girl and the rash went away with a brand change. I was curious and went to a no name that I hated because it leaked. I automatically switched to Pampers and the rash disappeared overnight.

> Yes, in fact I called Huggies and complained to them because of the severe diaper rash my little girl has developed. Thanks for the post, it was very helpful!

> my sons both got rashes from huggies and i find that both my kids leakes super easily with huggies now i only buy pampers except the huggies pull ups my son likes the cars pull ups

> yes i wouldnt touch huggies at all my wee girls bum blistered with them!! im not keen on pampers either though because they always leaked on me.

> We switched from Pampers to Huggies when my son was seven days old. He got a rash so bad it was bleeding; diaper rash cream only helped a little bit. I read this post and subsequent comments and we immediately switched back to Pampers. Within a day it has already started getting better and he isn't screaming with every diaper change. We will definitely be sticking with Pampers from here on out!

> MY SON IS HAVING THE EXACT SAME REACTION TO HUGGIES!!!! I thought it was just my son! I know that they can develop sensitivities to diaper brands but not this bad. Good to know it's not just my son's bottom!

> im in new zealand and i had this with our huggies.as soon as we change brands it went away like over night

> yes i had the same problem with my daughter 5months and 2weeks,with huggies diapers my baby is just recovering from that ( peeling, cracked, and bleeding) will not go back to using huggies again!

---

[1] https://www.circleofmoms.com/moms-under-30-1/huggies-diaper-rash-536781

19.     In the same vein, commenters on community.babycenter.com[2] relate:

We were using the Huggies Little Snugglers newborn size diapers on her; never any problems. When we realized she was growing too big for them, I searched her closet for size 1 diapers (since that's all we got from her shower) and decided to use Huggies Snug & Dry size 1's, with Mickey Mouse on them. I decided to wait on trying the Pampers or Luvs and Target brand size 1's that we also have a bunch of, since she was doing so well on the Huggies before.  Now I'm seriously confused because after just half a day of wearing the Snug & Dry, she's got terrible diaper rash!!! She's never had even a spot of redness down there before. I understand it could just be a coincidence, but I'm baffled because I change her diapers so often (probably too much) and all of a sudden, she's in pain, screaming and a firery red rash all up her privates, in the creases and spreading back to the crack of her bum.

My daughter is fine with any Huggies diapers except the snug and dry. She got a terrible rash on them. I returned them to Walmart, and got a different line of Huggies. I have also herd from friends that their children are super sensitive to the snug and dry diapers. Although when we use disposables Huggies are my favorite by far. Little Snugglers are #1 and Little Movers are #2. And nothing works as well overnight as their overnight diapers!

When my DD *(dear daughter)* was that age, we found a great deal on a pack of huggies. Most regrettable diaper purchase ever. Less than an hour of wearing one and she started screaming. Horrible red rash all over privates and bum. We never used huggies products since.

I had to switch DD *(dear daughter)* from Huggies Snug and Dry because it caused a HORRIBLE rash in just a matter of days. It could be a coincidence that your daughter is getting it right as you changed diapers, but that's what it was for mine.

This sounds just like a reaction one of mine had to Huggies. We switched to Pampers and had no more problems.

20.     We find more of the same on Amazon.com, where verified purchasers of Huggies

Snug & Dry write:

Create severe diaper rash on my 2year old. I usually use pampers and I decided to go with huggies due to price difference but in my case, even though I change diaper very frequently and as I notice some pee, after 1 week of use my son developed really bad diaper rash. This is the second time it happened. Since I tried huggies when he was younger he hot diaper rash, I wasn't sure if that's because of diaper brand/type at the time, but I went back to pampers swaddlers. This time I thought I hive this a try again but same exact thing happened after a week of use. I don't recommend this diapers I think some material in there is causing these reactions which I would never want on my baby.[3]

---

[2] https://community.babycenter.com/post/a67692019/diaper-rash-from-huggies
[3]                         https://www.amazon.com/HUGGIES-Snug-Diapers-Count-Packaging/product-reviews/B00BCXF7MU/ref=cm_cr_othr_d_paging_btm_3?pageNumber=3&reviewerType=all_reviews

These diapers are a fail. After switching from Huggies little snugglers, I was very disappointed in how these were made. They have more of a chemical smell, are not as soft, and they don't have the stay in place sticky for the tabs. They sag very low after being filled and the little snugglers never gave me that problem. They feel cheap and I wish I would have sent them back before using any cause now I'm just trying to quickly go through them by changing my baby's diaper more often. He has got more diaper rashes since using these also. No pee leaks but plenty of poo leaks at the back of the legs if not changed immediately although the snugglers are the same there for us. If I could I would buy only the bambo nature diapers or andy pandy brand is the best if you're rich... Also I just hate the tacky print they use. It shows through any light clothing. Why not use something trendy/classy? I'm switching back to little snugglers even if they're more expensive...[4]

I just cannot believe the lack of quality I received from a Huggies brand diapers. These are just awful, I've always trusted Huggies for both my children I usually buy the little movers from Costco. And this time I'm wishing I spent a little more for the better quality. I just don't understand how two products from the same company can be so different, especially when it's meant for such delicate skin. These diapers are so thin they leak terribly, and they've given my daughter an awful rash in the area where her inner leg rubs against the diaper, no wonder they've made an improvement with the little movers specifically for this problem. But why not just discontinue such a terrible product? Don't waste your money.[5]

We hated these! My 1 year old has never had diaper rash until we tried these a few weeks ago. Since then shes broken out a few times. These have leaked in 2 hours, pampers can go all night without leaking. Poop even leaked out the side when she didn't even poop that much. As soon as she pees in the huggies you can smell pee. We liked the huggies they used at the hospital but these ones were terrible. Will be going back to pampers for sure.[6]

These don't even deserve 1 star honestly, they all have broken apart after one urination. My one year old daughter went down for a nap happy, healthy and woke up covered in a blistered rash from the diaper breaking apart while she slept. I changed from luvs to huggies, I used 5 diapers in total between my 1 year old and 2 year old, before tossing the rest in the trash!!! Huggies should not sell diapers anymore![7]

---

[4]                https://www.amazon.com/HUGGIES-Snug-Diapers-Count-Packaging/product-reviews/B00BCXF7MU/ref=cm_cr_othr_d_paging_btm_3?pageNumber=3&reviewerType=all_reviews

[5]                https://www.amazon.com/HUGGIES-Snug-Diapers-Count-Packaging/product-reviews/B00BCXF7MU/ref=cm_cr_othr_d_paging_btm_3?pageNumber=3&reviewerType=all_reviews

[6]                https://www.amazon.com/HUGGIES-Snug-Diapers-Count-Packaging/product-reviews/B00BCXF7MU/ref=cm_cr_othr_d_paging_btm_4?pageNumber=4&reviewerType=all_reviews

[7]                https://www.amazon.com/HUGGIES-Snug-Diapers-Count-Packaging/product-reviews/B00BCXF7MU/ref=cm_cr_othr_d_paging_btm_5?pageNumber=5&reviewerType=all_reviews

> I don't know what happened to Huggies Snug and Dry, but the new version is horrid. My baby would wake up with tiny pieces of glue or whatever the material that they are using now on his skin, this is only after 6-7 hs of wear at night. The sticky substance that supposed to be inside the diaper somehow leaks and ends up on baby's skin and eventually irritates and you have a diaper rash or worse. Don't buy. Even though it's cheaper, but not worth the irritation of baby's skin.[8]

21.   The same points are reiterated in customer complaints on *Huggies's very own website*.  On dissatisfied customer wrote as recently as the latter half of July 2018:

> I bought the snug and dry diapers for my toddler 2 months ago through Amazon subscription. I was excited bc it was a great savings compared to the luvs we were buying from Walmart. He never has a diaper rash, but I started noticing his bottom stayed red all of sudden and he would cry (sometimes scream) when I changed him. It seemed odd but I hadn't even thought it may be the diapers.
>
> Well we ran out before the next shipment [sic] came and so we bought our usual luvs. He had zero issues with a diaper rash during this time.
>
> The next box arrived last week. After just 2 days of using the huggies again his bottom is bright red! He screams when he soils the diaper. He screams when we change and bathe him so much that his little body is shaking! It is absolutely the diapers causing the rash! I'm have about 160 diapers left and I'm throwing them out!![9]

22.   Defendant offered a boilerplate response to the effect that it takes such concerns very seriously and should be contacted by the dissatisfied customer.  But Defendant has been offering such boilerplate response for years and the problem persists.  As far back as 2013, Defendant responded to similar frustrations voiced on Facebook as follows:

> Hello Huggies Parents,
>
> As some of you may have heard, a concern about one of our diapers causing irritation was raised recently on Facebook. We take any concerns about our diapers very seriously, and we are working directly with this mom to learn more about what happened and how we can help. Nothing is more important than the safety of the little ones who use our products.
>
> Families put their trust in Huggies diapers every day, and all of our Huggies diapers have been thoroughly evaluated to ensure they are safe. As parents ourselves, we know you

---

[8]                          https://www.amazon.com/HUGGIES-Snug-Diapers-Count-Packaging/product-reviews/B00BCXF7MU/ref=cm_cr_othr_d_paging_btm_5?pageNumber=5&reviewerType=all_reviews
[9] https://www.huggies.com/en-us/diapers/snug-and-dry?WT.mc_id=HUG_Paid-Search_Gen18_EN-US_HUG-G&WT.srch=1&ReferralCode=HUG-GENENU-PA-OGI-20180401

may have additional questions or concerns. Please don't hesitate to contact us at http://bit.ly/8ZuAUH[10]

23.     Notwithstanding its announced interest in learning more, the facts on the ground show that Defendant has learned nothing.

**Defendant's Actionable Conduct**

24.     Defendant is in the business of developing, designing, manufacturing, marketing, advertising, and distributing Huggies diapers and other personal care and cleaning products to consumers.  Huggies is among the top-selling diapers in the country and is sold in supermarkets, convenience stories, and pharmacies throughout the United States.

25.     Through its advertising and marketing, Defendant promoted and continues to promote Huggies as being safe and comfortable for infants.  The Product website states that the Product's characteristics will ensure "more quality time with baby" and "help keep baby dry so they can giggle a little longer."[11]   Yet J.F. was very far from giggling after Plaintiff Morales applied the Product to him, and Plaintiff Morales did not consider the ensuing doctor's visit to be quality time.

26.     Whether or not they viewed these specific representations, Plaintiff and the Class did, and a reasonable consumer would, expect the Product to be safe and comfortable for infants. No reasonable consumer would expect the Product to cause prolonged, painful rashes that lead to doctors' visits.

27.     Plaintiff and Class members were misled into purchasing an unsafe product, which did not provide the attributes and benefits that they reasonably expected to receive and

---

[10]     https://www.facebook.com/huggies/posts/hello-huggies-parentsas-some-of-you-may-have-heard-a-concern-about-one-of-our-di/10151828209894387/

[11]     https://www.huggies.com/en-us/diapers/snug-and-dry?WT.mc_id=HUG_Paid-Search_Gen18_EN-US_HUG-G&WT.srch=1&ReferralCode=HUG-GENENU-PA-OGI-20180401

believed they were receiving.  As a result of Defendant's negligent manufacturing process and deceptive acts and practices, Plaintiff and Class members purchased a product that was not safe for its intended use and so did not offer the qualities for which it had been advertised.

28.     Defendant failed to warn consumers that the Product carried the unreasonable dangers exemplified in Plaintiff Morales's experience.

29.     Defendant owed a legal duty to Plaintiff and Class members to exercise reasonable care by developing, manufacturing, and marketing a product that was safe for its intended use.  Defendant knew or should have known that its failure to ensure reasonable safety standards would cause serious pain and injury to vulnerable infants.

30.     Plaintiff and Class members would not have purchased the Product had they known it carried these dangers.

31.     Plaintiff and Class members had no way of independently discovering that Defendant's design and/or manufacturing process assigned little importance to infant health and safety.

32.     Defendant breached its duty to consumers, which directly and proximately resulted in Plaintiff and other Class members suffering injury in fact, physical injury and suffering, financial injury, the personal expenditure of time and resources, and mental anguish.

33.     Plaintiff and Class members were injured financially because Defendant's negligent and dangerous manufacturing process has reduced the value of the Product to zero. Since they can no longer be certain of the Product's safety, their purchases are unusable.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff Morales seeks to represent a class consisting of:

All persons or entities who purchased the Product in the United States during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class")

35.     In the alternative, Plaintiff Morales seeks to represent a class consisting of:

All persons or entities who purchased the Product in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class")

36.     The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, and any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

37.     Plaintiff reserves the right to revise Class definitions based on facts learned in the course of litigating this matter.

38.     Class members are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through the appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Classes. Other members of the Class may be identified from records maintained by Defendant and may be notified of the pendency of this action by mail, or by advertisement, using the forms of notice customarily used in class actions such as this.

39.     Plaintiff's claims are typical of the claims of other Class members as all Class members are similarly affected by Defendant's wrongful conduct.

40.     Plaintiff will fairly and adequately protect the interests of Class members in that Plaintiff has no interests antagonistic to those of other Class members.  Plaintiff has retained experienced and competent counsel.

41.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages sustained by individual Class members may be relatively small, the expense and burden of individual litigation make it impracticable for them to individually seek redress for the wrongful conduct alleged herein. If class treatment of these claims were not available, Defendant would likely unfairly receive hundreds of thousands of dollars or more in improper charges.

42.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the common questions of law and fact to the Classes are:

     i.   whether Defendant made misrepresentations and/or deceptive omissions concerning the safety of the Product;

    ii.   whether Defendant's marketing, promotion and advertising of the Product is false, fraudulent, deceptive, unlawful or misleading;

   iii.   whether Defendants' marketing, promotion, advertising and sale of the Product is and was a deceptive act or practice in the conduct of business directed at consumers, giving rise to a violation of NY GBL § 349 and § 350;

   iv.   whether Plaintiff and Class members sustained injuries or damages as a result of Defendant's false advertising of the Product;

    v.   whether Plaintiff and Class members are entitled to equitable relief and prospective injunctive relief enjoining Defendant from continuing to engage in

the fraudulent, deceitful, unlawful and unfair common scheme as alleged in this

Complaint; and

vi.   whether Defendant's conduct rises to the level of reprehensibility under

applicable law such that the imposition of punitive damages is necessary and

appropriate to fulfill the societal interest in punishment and deterrence, and the

amount of such damages and/or their ratio to the actual or potential harm to the

Class.

43.    The prosecution of this action as a Class action will reduce the possibility of repetitious litigation. Plaintiff knows of no difficulty which will be encountered in the management of this litigation which would preclude its maintenance as a class action.

44.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual class member are too small to make it economically feasible for an individual class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

45.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

46.    The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Class

predominate over any questions affecting only individual members and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

47.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.

48.     Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

### COUNT I

**INJUNCTION FOR VIOLATIONS OF NY GBL § 349
(DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

49.     Plaintiff Morales realleges and incorporates herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein.

50.     Plaintiff Morales brings this claim individually and on behalf of the Class for an injunction for violations of NY GBL § 349.

51.     NY GBL § 349 provides that deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful.

52.     Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court

may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

53.     Defendant both expressly and by omission misrepresented the nature of the Product, failing to warn consumers of its significant dangers for the health and safety of vulnerable infants.

54.     Defendant knowingly and falsely represented that the Product was fit to be used for the purpose for which it was intended when it knew that the Product was defective and dangerous.

55.     Defendant's misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and advertisement of the Products.

56.     Defendant engaged in the deceptive acts and practices alleged herein in order to sell the Product to the public, including Plaintiff and the Class.

57.     Defendant's practices, acts, policies, and course of conduct, including its omissions, as described above, were intended to induce, and did induce, Plaintiff and the Class to purchase the Product.

58.     Defendant sold the Product knowing that it contained the defects alleged herein.

59.     Acts and omissions by Defendant were likely to mislead a reasonable consumer into purchasing the Product.  Defendant's deceptive acts and omissions are material because they concern an essential feature of the Product, its safety for vulnerable infants.

60.     Defendant has refused to act on grounds generally applicable to the injunctive relief sought by Plaintiff, thereby making final injunctive relief appropriate.

61.     Defendant persists in its deceptive and unfair marketing and sales practices regarding the Product to the detriment of consumers across the country, including Plaintiff and the Class.

62.     If Defendant is allowed to continue with these practices, consumers, including Plaintiff and the Class, will be irreparably harmed.  Plaintiff and the Class do not have a plain, adequate, speedy, or complete remedy at law to address all of the wrongs alleged in this Complaint unless injunctive relief is granted to stop Defendant's deceptive marketing and sale of the Product.

63.     Plaintiff Morales is therefore entitled to an injunction requiring Defendant to cease its unfair and deceptive practices relating the sale of the Product.

64.     Plaintiff Morales seeks a Court Order requiring Defendant to do the following until such time as Defendant identifies and corrects the defects in the Products:

    a.  discontinue advertising, marketing, packaging and otherwise representing the Product as safe and healthy without providing prominent warnings and disclosures regarding the risks described herein;

    b.  undertake an immediate public information campaign to inform consumers of the truth about the Product and Defendant's prior practices relating thereto; and

c.  correct any erroneous impression it created concerning the nature, characteristics, or qualities of the Product, including without limitation, the placement of corrective advertising and providing written notice to the general public.

## COUNT II

**DAMAGES FOR VIOLATIONS OF NY GBL § 349 and § 350**
**(DECEPTIVE AND UNFAIR TRADE PRACTICES/FALSE ADVERTISING)**
**(Brought Individually and on Behalf of the Class)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent New York consumer protection laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

65.  Plaintiff Morales realleges and incorporates herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein.

66.  Plaintiff Morales brings this claim for damages under NY GBL § 349 & § 350.

67.  Defendant engaged in consumer-oriented, commercial conduct by selling and advertising the Product.

68.  Defendant misrepresented and omitted material information regarding the Product by failing to disclose foreseeable risks created by its systematic indifference the harmful, rash-inducing nature of its diapers.

69.  Defendant's misrepresentations and concealment of material facts constitute unconscionable commercial practices, deception, fraud, false advertising, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts with the intent that others rely on such concealment, suppression, or omission in connection with the sale and advertisement of the Product, in violation of NY GBL § 349.

70. Defendant knowingly and falsely represented that the Product was fit to be used for the purpose for which it was intended, when Defendant knew it was defective and dangerous.

71. Defendant engaged in the deceptive acts and practices alleged herein in order to sell the Product to the public, including to Plaintiff Morales and the Class.

72. Defendant's practices, acts, policies, and course of conduct, including its omissions, as described above, were intended to induce, and did induce, Plaintiff Morales and Class members to purchase the Product.

73. Defendant sold the Product knowingly concealing that it contained the defects alleged herein.

74. As a direct and proximate result of these unconscionable, unfair, and deceptive acts or practices, Plaintiff Morales and the Class were injured when they paid money for a product that did not have the qualities and attributes that Defendant had advertised.

75. Plaintiff and the Class are therefore entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorney's fees.

## COUNT III

### BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar breach of warranty laws of other states and the District of Columbia to the extent New York breach of warranty laws are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

76. Plaintiff realleges and incorporates herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein.

77. In "a breach of warranty of merchantability claim, Plaintiff must allege that the product is not fit for the ordinary purposes for which such goods are used." *Gasque v. Thor*

20

*Motor Coach*, 2017 NY Slip Op 50122(U), ¶ 3 (Sup. Ct.) (citing *Bradley v. Earl B. Feiden, Inc*., 8 NY3d 265, 273, 864 N.E.2d 600, 832 N.Y.S.2d 470 (2007)).

78.     Defendant impliedly warranted and represented through advertisements, marketing, packaging, labels, websites and other material that the Product is fit for the ordinary purposes of diapers, which is to capture infant's waste products without unnecessary pain or discomfort.

79.     Defendant breached said warranty because the Product purchased by Plaintiff induced painful rashes that are not created by other brands of diapers and which reasonable consumers do not expect.

80.     As a direct and proximate result of Defendant's breach of the implied warranty of merchantability, Plaintiff purchased unsafe products and her son was physically harmed as a result.

81.     As a direct and proximate result of Defendant's breach, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT IV

**STRICT PRODUCTS LIABILITY**
**(Manufacturing Defect and Failure to Warn)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar strict products liability laws of other states and the District of Columbia to the extent New York strict liability law are inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

82.     Plaintiff realleges and incorporate herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein, and further alleges as follows.

83.     At all times herein mentioned, Defendant designed, researched, manufactured, tested, advertised, promoted, marketed, sold and/or distributed the Product used by Plaintiff and the Class.

84.     The Product was expected to, and did, reach the usual consumers, handlers, and persons coming into contact with it without substantial change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendant.

85.     In order to plead a manufacturing defect, a plaintiff must assert that (1) the product was not reasonably safe as marketed; (2) the plaintiff used the product for a normal purpose; (3) by exercising reasonable care, plaintiff would not have discovered the defect and apprehended its danger; and (4) plaintiff would not have otherwise avoided injury by exercising ordinary care. *Derienzo v. Trek Bicycle Corp.*, 376 F.Supp.2d 537, 560 (S.D.N.Y. 2005).

86.     Element #1 is satisfied because The Product was not reasonably safe as marketed.

87.     Element #2 is satisfied because Plaintiff used the Product for its normal, intended purpose—as a diaper.

88.     Element #3 is satisfied because Plaintiff could not have discovered the danger of the Product through the exercise of reasonable care, as the Product did not have any obvious signs of defect.

89.     Element #4 is satisfied because while Plaintiff stopped using the Product after it caused injury to J.F., she could not have anticipated this outcome ahead of time.

90.     To establish a *prima facie* case of manufacturing defect, the plaintiff "may rely upon the circumstances of the accident and proof that the product did not perform as intended." *Hare v. Hoveround Corp.,* 2009 WL 3086404, at *4 (N.D.N.Y. September 23, 2009) (citing *Brown v. Borruso,* 238 A.D.2d 884, 885, 660 N.Y.S.2d 780 (4th Dept. 1997)).

91.     In combination with myriad consumer complaints posted throughout the internet, the circumstances of J.F's injury establish that the Product was defectively manufactured—that is, manufactured without the safety precautions appropriate for diapers.

92.     Defendant failed to warn Plaintiff of this problem even though it knew or had reason to know of it, having been aware of complaints regarding it for years.

93.     Defendant had a duty to give conspicuous warning of the dangers associated with the Product, which it knew or should have known existed.

94.     As a direct and proximate result of Defendant's manufacturing process and failure to warn of the dangers created by that process, Plaintiff, J.F., and the Class suffered physical injury and/or economic harm.

95.     Defendant's actions and omissions as identified in this Complaint show that Defendant acted maliciously and intentionally disregarded the rights of Plaintiff, J.F., and the Class, thus warranting the imposition of punitive damages.

## COUNT V

## NEGLIGENCE

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar negligence law of other states and the District of Columbia to the extent New York negligence law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

96.     Plaintiff realleges and incorporates herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein, and further alleges as follows:

97.     At all times material hereto, Defendant designed and manufactured the Product.

98.    Defendant had a duty to exercise reasonable care in designing, manufacturing, assembling, marketing, selling and/or distributing the Product. Defendant placed the Product into the stream of commerce.  It had a duty to ensure that the Product would perform as intended and not create serious health risks to Plaintiff.

99.    Defendant failed to exercise ordinary care in the designing, manufacturing, assembling, inspecting, marketing, selling and/or distributing the Product into the stream of commerce.  Defendant knew or should have known that the Product was manufactured without adequate safety precautions and that this created an unreasonable risk of serious rashes to infants.

100.    The negligence of Defendant, its agents, servants, and/or employees, included, but was not limited to, the following acts and/or omissions:

i.    manufacturing, marketing, and distributing the Product without adequately testing it for defects;

ii.    failing to warn Plaintiff, the public, and the medical and healthcare profession, of the dangers of the Product;

iii.    failing to recall or otherwise notify users at the earliest date that it became known that the Product was dangerous and defective;

iv.    representing that the Product was safe for its intended purpose when it is in fact unsafe;

101.    Defendant knew or should have known that consumers such as Plaintiff would suffer foreseeable injury, both physical and economic, and/or be at an increased risk of suffering injury as a result of Defendant's failure to exercise ordinary care.

102.    Defendant's negligence was the proximate cause of J.F.'s injury.

103.     Defendant's conduct as described herein, including but not limited to its failure to provide adequate warnings, and its continued manufacture, sale, and marketing of the Product, which it knew was dangerous, evidences intentional disregard for the rights of Plaintiff and warrant the imposition of punitive damages.

<u>COUNT VI</u>

**FRAUDULENT MISREPRESENTATION/CONCEALMENT**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar fraudulent misrepresentation/concealment law of other states and the District of Columbia to the extent New York fraudulent misrepresentation/concealment law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the New York Class)**

104.     Plaintiff realleges and incorporate herein by reference the allegations contained in all the preceding paragraphs of this Complaint, as if fully set forth herein.

105.     A claim for fraudulent misrepresentation requires a plaintiff to allege "[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." *Mandarin Trading Ltd. v. Wildenstein*, 2011 NY Slip Op 741, ¶ 3, 16 N.Y.3d 173, 178, 919 N.Y.S.2d 465, 469, 944 N.E.2d 1104, 1108 (quoting *Lama Holding Co. v Smith Barney Inc*., 88 NY2d 413, 421, 668 NE2d 1370, 646 NYS2d 76 [1996]).

106.     Element #1 is satisfied because Defendant knowingly misrepresented to Plaintiff and the public by either act or omission that the Product is safe for infants.  As noted above, Defendant has been aware of the problem for some time.

107.    Element #2 is satisfied because these and other similar representations were made for the purpose of inducing the reliance of Plaintiff and the Class.  Obviously, any parent would care a great deal about whether a product was safe and suitable for infants.

108.    Element #3 is satisfied because Plaintiff Morales's reliance on these deceptive representations and/or omissions was justified.  She had no way of discovering that they were not true.

109.    Element #4 is satisfied because Plaintiff Morales suffered financial injury and J.F. suffered physical injury as a result of Defendant's misrepresentation.

110.    Defendant's conduct as described herein, including but not limited to its failure to provide adequate warnings, and its continued manufacture, sale, and marketing of the Product, which it knew was dangerous, evidences intentional disregard for the rights of Plaintiff and warrant the imposition of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seeks judgment against Defendant, as follows:

a.   An Order that this action be maintained as a class action, appointing Plaintiff as representative of the Nationwide Class or, in the alternative, the New York Class;

b.   An Order appointing the undersigned attorney as Class Counsel in this action;

c.   Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

d.   All recoverable compensatory and other damages sustained by Plaintiff and Class members;

e.  Actual and/or statutory damages for injuries suffered by Plaintiff and Class members in the maximum amount permitted by applicable law;

f.  An order (i) requiring Defendant to immediately cease their wrongful conduct as set forth in this Complaint; (ii) ordering Defendant to engage in a corrective advertising campaign; and (iii) requiring Defendant to reimburse Plaintiff and all Class members, up to the amounts paid for the Products;

g.  Statutory pre-judgment and post-judgment interest on any amounts;

h.  Payment of reasonable attorneys' fees and costs; and

i.  Such other relief as the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiff hereby demand a jury trial on all claims so triable.


Dated: August 15, 2018

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By: _____ /s/ *C.K. Lee* _____
             C.K. Lee, Esq.

C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Telephone: (212) 465-1188
Facsimile: (212) 465-1181
*Attorneys for Plaintiff and the Class*