UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
                                       :

HEIDY MORALES, individually and as parent  :
and guardian of J.F., and on behalf of all others  :
similarly situated,                            :

                        Plaintiff,        :   No. 7:18-cv-07401-NSR

            v.                        :

KIMBERLY-CLARK CORPORATION,     :

                     Defendant.     :
--------------------------------------------------------x

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT

GIBSON, DUNN & CRUTCHER LLP
TIMOTHY W. LOOSE (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520
E-mail: TLoose@gibsondunn.com

LISSA M. PERCOPO (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539
E-mail: LPercopo@gibsondunn.com

Attorneys for Kimberly-Clark Corporation

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND .............................................................................................. 3

III. LEGAL STANDARD ...................................................................................... 6

IV. ARGUMENT .................................................................................................. 7

    A.    Plaintiff's Consumer Claims Under Sections 349 And 350 Fail As A Matter of Law (Counts I & II). ............................................................. 9

        1.    The Statements Plaintiff Challenges Are Non-Actionable Puffery. ........ 10

        2.    No Reasonable Consumer Would Be Deceived Because Diaper Rashes Are A Fact Of Life ...................................................................... 12

        3.    There Is No Connection Between Any Alleged Misconduct And Plaintiff's Purported Injuries ....................................................... 13

        4.    Plaintiff Lacks Standing To Pursue Injunctive Relief Under Section 349 .............................................................................................. 15

    B.    Plaintiff's Strict Liability And Negligence Claims Are Fatally Deficient (Counts IV & V). .......................................................................... 16

        1.    The Amended Complaint Fails To Plead Essential Elements Of Plaintiffs' Manufacturing Defect Claim And Contradicts Others. .......... 17

        2.    Plaintiff's Failure To Warn Claim Fails As A Matter Of Law. ............... 19

    C.    Plaintiff's Breach Of Implied Warranty Of Merchantability Claim Fails (Count III). ....................................................................................... 20

    D.    Plaintiff's Fraudulent Misrepresentation And Concealment Claims Fail (VI)...................................................................................................... 22

V. CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

Page

**Cases**

*Am. Guarnatee & Liab. Ins. Co. v. Cirrus Design Corp.*,
No. 09 Cv. 8357(BSJ)(HBP), 2010 WL 5480775 (S.D.N.Y. Dec. 30, 2010) ........................20

*Armstrong v. McAlpin*,
699 F.2d 79 (2d Cir. 1983).............................................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................................6, 7, 18

*Barrett v. Black & Decker (U.S.) Inc.*,
No. 06 Civ.1970(SCR)(MDF), 2008 WL 5170200 (S.D.N.Y. Dec. 9, 2008) ........................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................................................................................................6, 7

*Cavanagh v. Ford Motor Co.*,
No. 13–CV–4584(JS)(WDW), 2014 WL 2048571 (E.D.N.Y. May 19, 2014) ................18, 19

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)............................................................................................2

*Cowan v. Costco Wholesale Corp.*,
15-CV-05552 (PKC), 2017 WL 59080 (E.D.N.Y. Jan. 5, 2017) ...........................................19

*Daniel v. Molendez Int'l, Inc.*,
287 F. Supp. 3d 177 (E.D.N.Y. 2018) ...............................................................................9, 12

*Daniel v. Tootsie Roll Indus., LLC*,
17 Civ. 7541 (NRB), 2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018) .................................15, 16

*Denny v. Ford Motor Co.*,
87 N.Y.2d 248 (1995) .....................................................................................................20

*E.R. Squibb & Sons, Inc. v. Bowen*,
870 F.2d 678 (D.C. Cir. 1989) ......................................................................................4, 14

*Fink v. Time Warner Cable*,
714 F.3d 739 (2d Cir. 2013).............................................................................................13

*Goldin v. Smith & Nephew, Inc.*,
No. 12 Civ. 9217(JPO), 2013 WL 1759575 (S.D.N.Y. Apr. 24, 2013).................................19

*Horowitz v. Stryker Corp.*,
613 F. Supp. 2d 271 (E.D.N.Y. 2009) ...............................................................................10

# TABLE OF AUTHORITIES
(continued)

Page

*Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*,
No. 12–CV–5354 (KAM)(RLM), 2014 WL 1311979 (E.D.N.Y. Mar. 28, 2014) .................................................................................................................23

*Kampuries v. Am. Honda Motor Co.*,
204 F. Supp. 3d 484 (E.D.N.Y. 2016) ..................................................................24

*Kerr v. Koemm*,
557 F. Supp. 283 (S.D.N.Y. 1983) .......................................................................20

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994)................................................................................................7

*Kommer v. Bayer Consumer Health*,
252 F. Supp. 3d 304 (S.D.N.Y. 2017)........................................................9, 11, 13

*Kommer v. Bayer Consumer Health, a division of Bayer AG*,
710 F. App'x 43 (2d Cir. 2018) ...........................................................................16

*Kommer v. Ford Motor Co.*,
1:17-CV-296 (LEK/DJS), 2017 WL 3251598 (N.D.N.Y. July 28, 2017) ..............11

*Koulkina v. City of N.Y.*,
559 F. Supp. 2d 300 (S.D.N.Y. 2008) ..................................................................18

*L–7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011).................................................................................13

*Lacoff v. Buena Vista Publ'g, Inc.*,
705 N.Y.S.2d 183 (N.Y. Sup. Ct. 2000) ..............................................................11

*Leonard v. Abbott Labs., Inc.*,
No. 10–CV–4676(ADS)(WDW), 2012 WL 764199 (E.D.N.Y. Mar. 5, 2012)................10, 11

*Lerner v. Fleet Bank, N.A.*,
459 F.3d 273 (2d Cir. 2006)...................................................................................7

*Lewis v. Abbott Labs.*,
No. 08 Civ. 7480(SCR)(GAY), 2009 WL 2231701 (S.D.N.Y. July 24, 2009) ......20

*Mangiafico v. Blumenthal*,
471 F.3d 391 (2d Cir. 2006)...................................................................................2

*Manuel v. Pepsi-Cola Co.*,
17 Civ. 7955 (PAE), 2018 WL 2269247 (S.D.N.Y. May 17, 2018) .......................12

# TABLE OF AUTHORITIES
### (continued)

Page

*Marcus v. AT&T Corp.*,
    938 F. Supp. 1158 (S.D.N.Y. 1996), *aff'd*, 138 F.3d 46 (2d Cir. 1998) ..................12

*Morrison v. Hoffmann-La Roche, Inc.*,
    14-CV-4476 (DLI)(RML), 2016 WL 5678546 (E.D.N.Y. Sept. 29, 2016).......................10, 15

*Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*,
    723 F.3d 192 (2d Cir. 2013)......................................................................22

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d 220 (2d Cir. 2016).................................................................15, 16

*Oden v. Boston Sci. Corp.*,
    330 F. Supp. 3d 877 (E.D.N.Y. 2018) .................................9, 10, 15, 16, 17, 18, 19, 20, 22, 23

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015).........................................................................9

*Pelman v. McDonald's Corp.*,
    237 F. Supp. 2d 512 (S.D.N.Y. 2003).....................................................20

*Premium Mortg. Corp. v. Equifax, Inc.*,
    583 F.3d 103 (2d Cir. 2009)........................................................................22

*Quintana v. B. Braun Med. Inc.*,
    17-cv-06614 (ALC), 2018 WL 3559091 (S.D.N.Y. July 24, 2018) ..................15, 24

*Reed v. Pfizer, Inc.*,
    839 F. Supp. 2d 571 (E.D.N.Y. 2012) ....................................................17

*Reid v. Time Warner Cable*,
    14-CV-3241 (DLI)(RML), 2016 WL 743394 (E.D.N.Y. Feb. 22, 2016)..................2

*Savage v. Beiersdorf Inc.*,
    No. 13–CV–0696 (DLI)(LB), 2013 WL 5532756 (E.D.N.Y. Sept. 30, 2013).......................17

*Simon v. Smith & Nephew, Inc.*,
    18 F. Supp. 3d 423 (S.D.N.Y. 2014).......................................................21

*Solak v. Hain Celestial Grp., Inc.*,
    3:17-CV-0704 (LEK/DEP), 2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) ..........................12

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)..............................................................................7

# TABLE OF AUTHORITIES
(continued)

Page

*Stewart v. Ocean State Jobbers, Inc.*,
 CIVIL ACTION NO. 3:17-CV-1266 (JCH), 2018 WL 379011 (D. Conn. Jan.
 10, 2018) ..................................................................................................................15

*Szymczak v. Nissan N. Am., Inc.*,
 No. 10 CV 7493(VB), 2011 WL 7095432 (S.D.N.Y. Dec. 16, 2011)....................................20

*Tears v. Boston Sci. Corp.*,
 17 Civ. 9793 (AJN), 2018 WL 4760659 (S.D.N.Y. Sept. 29, 2018).......................................19

*Telebrands Corp. v. Del Labs., Inc.*,
 719 F. Supp. 2d 283 (S.D.N.Y. 2010)......................................................................................2

*Viscusi v. Proctor & Gamble*,
 No. 05–CV–01528 (DLI)(LB), 2007 WL 2071546 (E.D.N.Y. July 16, 2007) ......................21

*Weinstein v. eBay, Inc.*,
 819 F. Supp. 2d 219 (S.D.N.Y. 2011).....................................................................................12

*Weisblum v. Prophase Labs, Inc.*,
 88 F. Supp. 3d 283 (S.D.N.Y. 2015).......................................................................................21

*Winter v. Am. Inst. of Med. Scis. & Educ.*,
 242 F. Supp. 3d 206 (S.D.N.Y. 2017).....................................................................................23

## Rules

Fed. R. Civ. P. 8 .........................................................................................................................6

Fed. R. Civ. P. 9(b) ...................................................................................................7, 22, 23, 24

Fed. R. Civ. P. 12(b)(1)..............................................................................................................7

Fed. R. Civ. P. 12(b)(6)..............................................................................................................6

## I.  INTRODUCTION

For over 50 years, Kimberly-Clark Corporation ("Kimberly-Clark") has manufactured and sold trusted infant care products under the well-known Huggies® brand name.  Huggies diapers have become a favorite choice for parents because they are safe, comfortable for children, and highly functional.  Kimberly-Clark's commitment to  safety and comfortability has made "Huggies . . . among the top-selling diapers in the country."  Dkt. No. 17 ("Am. Compl.") ¶¶ 22, 30, 33.  Huggies diapers are known for their effectiveness but do not promise to prevent conditions associated with the use of any diaper, such as diaper rash.

Through the Amended Complaint, Heidy Morales ("Plaintiff") seeks redress because her son allegedly developed a diaper rash while wearing a Huggies diaper.  *See id.* ¶¶ 14-17.  In an attempt to turn this everyday occurrence into a cognizable legal claim, she alleges Kimberly-Clark misled her because a website she does not purport to have seen before purchasing the product allegedly states the diaper's absorbent qualities allow "more quality time with baby" and "help keep baby dry so they can giggle a little longer."  *Id.* ¶ 34 (internal quotation marks omitted).  The Amended Complaint points to no other statement or omission that Plaintiff asserts made it reasonable for her to believe that the diaper she purchased prevented a condition so common it is named after the product.

The Amended Complaint purports to bring a series of other claims, but each is more flawed than the last.  Plaintiff cannot escape that her core allegation is that a diaper manufacturer is liable because her infant son developed a diaper rash, and the Amended Complaint fails to allege that her experience is any different from the countless other infants who develop a diaper rash every day.  The Amended Complaint baldly asserts that a single Huggies diaper caused the rash, *see id.* ¶ 16, but it conspicuously does not allege that the rash resolved itself when she immediately discontinued use of all Huggies products, *see id.* ¶¶ 15-16.  The Amended Complaint asserts that

her doctor unsurprisingly concluded that the rash was caused by the fact that her son wore a diaper, but it conspicuously does not allege that the doctor recommended switching diaper brands or that the doctor treated the rash in a manner that was different from normal diaper rashes. *See id.*

In an effort to make up for these fatal gaps, Plaintiff points to a chemical that a patent says "may" be used in conjunction with certain Kimberly-Clark products designed to absorb liquid, and baldly asserts the chemical was in the diaper she used in an unsafe quantity and caused the rash. *See* Exh. A at column ("col.") 5, line 26 ("Patent"); *see also* Am. Compl. ¶¶ 25, 28, 32.[1]  This assertion is unsupported by *any* properly pled factual allegation and is contradicted by other statements in the Amended Complaint.  Critically here, she asserts the *chemical* irritated her son

---

[1]  Citations to "Ex. __" refer to the four exhibits attached to the Declaration of Timothy Loose, filed concurrently herewith.  The Court may consider Exhibit A (the patent referenced at Am. Compl. ¶ 25), Exhibit B (the Huggies website referenced at Am. Compl. ¶ 21 n.12), and Exhibit C (the website referenced at Am. Compl. ¶ 18 n.1) because they are "incorporated in [the Amended Complaint] by reference." *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)). Exhibit A is also judicially noticeable as an "official record[] of the United States Patent and Trademark Office." *Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010) (taking judicial notice of design patent).  The Court may also take judicial notice of Exhibit D, the dictionary definition of nystatin.  *See Reid v. Time Warner Cable*, 14-CV-3241 (DLI)(RML), 2016 WL 743394, at *2 n.4 (E.D.N.Y. Feb. 22, 2016) (taking judicial notice of definition in Merriam-Webster dictionary).

and that it caused the rash but admits that what cured the rash was an *antifungal* ointment. *Compare* Am. Compl. ¶ 16 *with id.* ¶¶ 24-25.

Despite having already had an opportunity to amend, most of the remainder of the Amended Complaint is a series of conclusory statements that universally fail to adequately allege the identified claims. The Amended Complaint fails to plead any claim on which relief can be granted, and all claims must be dismissed with prejudice.

## II. BACKGROUND

Kimberly-Clark has long manufactured the Huggies line of diapers. *See id.* ¶ 33. Thousands of parents have given Huggies diapers five stars in online reviews. *See* Exh. B; Am. Compl. ¶ 21 n.12. In fact, for some parents, "Huggies is the ONLY brand that [they] use[] . . . for . . . [their] children because every other brand . . . [gives] them . . . rashes." *See* Exh. C; Am. Compl. ¶ 18 n.1. It is no wonder then that "Huggies is among the top-selling diapers in the country" and that the diapers are "sold in supermarkets, convenience stor[]es [sic], and pharmacies throughout the United States." Am. Compl. ¶ 33.

Kimberly-Clark takes great care to ensure the safety and effectiveness of its products. *See id.* ¶¶ 22, 30. This includes thorough evaluation prior to selling the products and follow-up if concerns are raised by consumers. *Id.* One of the characteristics of Huggies diapers that parents like is their absorbency. Huggies' absorbency is aided by "Superabsorbent materials," which will absorb up to 100 times their weight in moisture. *Id.* ¶ 30 (internal quotation marks omitted). These Superabsorbent materials are safe, as has been confirmed by more than 450 consumer safety tests. *Id.* Superabsorbent materials can look like "crystals" or "beads" when dry. *Id.* (internal quotation marks omitted). When wet, they become a gel. *Id.* Often these crystals or beads are not visible, but at times they are and may even come into contact with the baby. *Id.* This is not a concern as Superabsorbent materials are nontoxic and not harmful in gel form too. *Id.*

Kimberly-Clark offers a variety of diapers under the Huggies brand name, each of which comes with different features and are designed for children of different ages.  The Huggies Snug & Dry diapers, for example, can absorb moisture for up to twelve hours, and come with a visual indicator that allows parents to immediately see whether the diaper is wet.  *See id.* ¶ 1.  Regardless of their differences, all Huggies diapers are manufactured pursuant to Kimberly-Clark's commitment to putting the safety of babies first.  *See id.* ¶¶ 22, 30.

According to Plaintiff, in February 2018, she discovered "rashes [on her son's] private areas" and "[u]pon removing [his Huggies diaper]," she "immediately stopped using the . . . Huggies diapers."  *Id.* ¶¶ 14-15.  The Amended Complaint asserts that the rash persisted for days after she discontinued use of the Huggies diapers.  *Id.* ¶ 15.  It then reveals that a doctor explained that her son's diaper rash was caused by him having worn a diaper.  *See id.* ¶ 16.  The Amended Complaint does not allege that the doctor recommended that Plaintiff switch brands of diaper.  *See id.*  The only information the Amended Complaint provides about Plaintiff's son's diaper rash is a redacted image of the alleged rash and that the doctor "prescribed Nystatin Cream," a cream used to resolve fungal rashes.  *Id.* ¶¶ 14, 16; *see also E.R. Squibb & Sons, Inc. v. Bowen*, 870 F.2d 678, 679 (D.C. Cir. 1989) (explaining Nystatin Cream is an "antifungal agent[]" used to treat fungal rashes); Exh. D.  The Amended Complaint does not allege at all how the antifungal cream Plaintiff was prescribed could have been used to treat a rash caused by a chemical.  The Amended Complaint also asserts that Plaintiff "noticed blue crystals" in the diaper that "she had not noticed when she first put the diaper on [her son], " *see* Am. Compl. ¶ 17, but clarifies that the Superabsorbent materials that can form these "small beads of gel" were not the cause of her son's rash, *see id.* ¶¶ 30-31 (internal quotation marks omitted).

Plaintiff implies that her experience with the one Huggies diaper she used renders two statements allegedly on the Huggies website false or misleading: "more quality time with baby" and "help keep baby dry so they can giggle a little longer," *id.* ¶ 34 (internal quotations marks omitted), but the Amended Complaint does not assert that the diaper's absorbency was inconsistent with these statements. The Amended Complaint also does not challenge any other statement on any line of Huggies' product packaging or advertising. Plaintiff does not claim to have seen these statements before purchasing the Huggies diaper she used. *See id.* ¶ 35. The Amended Complaint also asserts that Kimberly-Clark made misleading omissions, *see, e.g.*, *id.* ¶¶ 78, 116, but does not identify what the omissions were or what Kimberly-Clark should have said.

Plaintiff brings suit here alleging "all variants" of Huggies are defective, *id.* ¶ 1, and that they all "cause[]" rashes, *id.* ¶ 24, based on one use of a diaper from the Huggies Snug & Dry line, *id.* ¶¶ 14-17. The Amended Complaint points to a "chemical additive" Ahcovel, and attributes her son's alleged rash and all of the rashes mentioned by unidentified consumers in online forums and reviews to it. *Id.* ¶¶ 24-25, 32. The Amended Complaint asserts that Kimberly-Clark applies the chemical to all of its diapers. *See id.* ¶ 25, 31. The Amended Complaint appears to reach this conclusion based on a patent assigned to Kimberly-Clark for an "improved fastening system[]." *Id.* ¶ 25 (internal quotation marks omitted); *see also* Exh. A. The Patent does not state when Ahcovel will be applied to Kimberly-Clark products, only that it "may" be. Exh. A at col. 5, line 26. It also expressly states that "changes and modifications are contemplated as being within the scope of the invention." *Id.* at col. 16, line 44-45. The Amended Complaint does not provide any basis for Plaintiff's assumption that the technology in the Patent was used in manufacturing the diaper she used, nor does it provide any basis for her assertion that a chemical that "may" have

been used in conjunction with the technology described is currently used in every diaper Kimberly-Clark manufactures.

The Amended Complaint asserts that "Kimberly-Clark does not . . . ensure that the level of Ahcovel in Huggies is safe because it does not inspect, test, or maintain the instruments that dispense it."  Am. Compl. ¶ 28.  But the Amended Complaint does not plausibly identify any failure in any quality control system used by Kimberly-Clark, nor does it identify any quality control system or other type of system used in Kimberly-Clark's manufacturing process.  *See id.* ¶¶ 28, 92-101.  It also does not allege how Ahcovel could cause any rash or the rash she asserts her child developed.  *See id.* ¶¶ 14-17, 24-25.

Based on her experience with one Huggies diaper, Plaintiff asserts on behalf of herself and others who purchased the diapers in New York a bevy of theories under New York law and further asserts on behalf of the "out-of-state Class members" "substantively similar" claims under the "laws of other states and the District of Columbia to the extent New York . . . law[] [is] inapplicable to [them]."  *See, e.g.*, *id.* at pp. 19, 22 (acknowledging New York law applies to her claims and other states' laws apply to the claims of "out-of-state Class members").

## III.  LEGAL STANDARD

This Court must dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it fails to state a claim.  To satisfy the pleading requirements of Rule 8, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint that only pleads a "sheer possibility that a defendant has acted unlawfully" does not meet the standard.  *Id.*  Although the Court must accept factual allegations as true, this tenet is "inapplicable to legal conclusions."  *Id.*  After stripping away the conclusory statements, the Court must rely on its "experience and common sense," *id.* at 679, to

determine whether the factual allegations "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

Because some of Plaintiff's allegations sound in fraud, they also must meet the "heightened pleading standard" set forth in Federal Rule of Civil Procedure 9(b).  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (applying Rule 9(b) to fraudulent misrepresentation and fraudulent concealment claims); *Armstrong v. McAlpin*, 699 F.2d 79, 90 (2d Cir. 1983) (applying 9(b) to fraudulent concealment claim).  Rule 9(b) also requires plaintiffs to "allege facts that give rise to a strong inference of fraudulent intent."  *Lerner*, 459 F.3d at 290 (citation and internal quotation marks omitted).

Additionally, where the Court lacks subject matter jurisdiction over a claim seeking injunctive relief that is not available to the plaintiff, it must dismiss that claim under Federal Rule of Civil Procedure 12(b)(1).  The "burden of establishing" jurisdiction and Article III standing "rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

## IV.  ARGUMENT

The Amended Complaint fails to set forth "enough facts to state a claim to relief that is plausible" and, instead, relies on "formulaic recitation[s]" in an attempt to distract from Plaintiff's implausible theory of liability.  *See Twombly*, 550 U.S. at 555, 570.  Once the Court disregards Plaintiff's bare legal assertions as it must, *Iqbal*, 556 U.S. at 678-79, 681, little remains of her Amended Complaint.  This is an especially glaring problem here, because she seeks to allege fraud, requiring that she "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Further compounding the problem, the few factual allegations in the Amended Complaint are internally inconsistent, rendering the defects incurable.

Plaintiff's theory of liability is that Kimberly-Clark should have warned her that children wearing diapers can develop diaper rashes. But the law does not impose a duty on manufacturers to warn of dangers so obvious. Taken to its logical conclusion, Plaintiff's position would require paper manufacturers to warn of paper cuts and milk manufacturers to warn of lactose intolerance. This Court should reject Plaintiff's invitation to impose almost limitless liability on manufacturers.

The claims fail for other reasons, too. Plaintiff's claims under New York General Business Law Sections 349 and 350 (the "Section 349" and "Section 350" claims) are insufficiently pled because she has not pled a misleading statement or omission. She also lacks standing to pursue injunctive relief under Section 349 because she has not alleged a real or immediate threat of injury. Her claim for breach of the implied warranty fails because she does not allege that the diaper did not contain her child's waste. Her strict products liability and negligence claims are fatally deficient because she does not identify how the diaper she used was uniquely defective, nor can she plead that Kimberly-Clark has a duty to warn of "dangers" as obvious as a diaper rash. Her claims for fraudulent misrepresentation and fraudulent omission fail because the Amended Complaint fails to allege any misrepresentation or omission, fails to allege any fraudulent intent, and fails to allege she relied on any statement at all.

All of these purported claims also must fail because the Amended Complaint does not adequately allege causation. For certain claims, Plaintiff must adequately plead that the diaper caused the diaper rash. *See, e.g.*, Am. Compl. ¶¶ 104 (strict products liability claims), 112 (negligence). For others, she must adequately plead that the alleged misstatements or omissions caused economic harm. *See, e.g.*, *id.* ¶ 84. The Amended Complaint wholly fails to plead either for two reasons. First, the only injury alleged is that her diaper-wearing infant developed a diaper rash. This "injury" is a fact of life for most infants and no factual allegation adequately pleads her

son's rash was any different.  Second, Plaintiff's attempt to plead that some defect in the Huggies diapers was the actual cause of the rash centers on unsupported assertions contradicted elsewhere in the Complaint and its incorporated documents.  As discussed in more detail below, these assertions related to causation amount to no more than bare legal conclusions that must be disregarded by the Court.

At bottom, Plaintiff's claims are conclusory, implausible, and are not of the kind that can be cured through further amendment.  Plaintiff has had ample time to investigate whether and how the specific diaper she used caused her baby's rash and had the opportunity to amend her complaint after the benefit of a preview of Kimberly-Clark's defenses in its pre-motion letter. *See* Dkt. No. 10.  The Amended Complaint should be dismissed with prejudice.

**A.   Plaintiff's Consumer Claims Under Sections 349 And 350 Fail As A Matter of Law (Counts I & II).**

Plaintiff's consumer claims fail because no reasonable consumer would believe references to "more quality time with baby" or "giggl[ing] a little longer" guarantee that a diaper prevents a condition so prevalent it bears the product's name: diaper rash.  Am. Compl. ¶ 34 (internal quotation marks omitted).  Claims under Sections 349 and 350 can only survive where a plaintiff alleges the defendant "engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) [she] suffered injury as a result of the allegedly deceptive act or practice." *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 901 (E.D.N.Y. 2018) (quoting *Daniel v. Molendez Int'l, Inc.*, 287 F. Supp. 3d 177, 186 (E.D.N.Y. 2018) (citing *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015))).  Plaintiff fails to allege the latter two elements.

"Conduct is materially misleading under [Sections 349 and 350] if it is likely to mislead a reasonable consumer acting reasonably under the circumstances." *Kommer v. Bayer Consumer Health*, 252 F. Supp. 3d 304, 310-11 (S.D.N.Y. 2017) (citation and internal quotation marks

omitted).   Plaintiff contends Kimberly-Clark's deceptive conduct consisted of statements it allegedly made on its website ensuring "more quality time with baby" and that the Huggies Snug & Dry diapers would "help keep baby dry so they can giggle a little longer."  Am. Compl. ¶ 34 (internal quotation marks omitted).   The Amended Complaint also makes passing reference to unidentified "omitted material information" regarding the diapers, but does not plead any omission.  *See, e.g.*, *id.* ¶ 78.

Nothing in the Amended Complaint would have "materially misle[d]" a reasonable consumer under the circumstances here.  *Oden*, 330 F. Supp. 3d at 901 (citations and internal quotation marks omitted).  The identified statements are non-actionable puffery and any passing reference to an omission is not sufficiently pled to be considered.  Furthermore, there is "no connection" between anything Kimberly-Clark said or failed to say and any injury alleged in the Amended Complaint.  *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (citation omitted) (dismissing consumer claim for lack of causation); *see also Morrison v. Hoffmann-La Roche, Inc.*, 14-CV-4476 (DLI)(RML), 2016 WL 5678546, at *12 (E.D.N.Y. Sept. 29, 2016) (same).  Count I fails for the additional reason that Plaintiff does not have standing to pursue injunctive relief under Section 349.

### 1.     The Statements Plaintiff Challenges Are Non-Actionable Puffery.

The only two statements Plaintiff alleges Kimberly-Clark made—that the diapers allow "more quality time with baby" and "help keep baby dry so they can giggle a little longer," Am. Compl. ¶ 34 (internal quotation marks omitted)—are "too vague to mislead a reasonable consumer and therefore are immaterial."  *Leonard v. Abbott Labs., Inc.*, No. 10–CV–4676(ADS)(WDW), 2012 WL 764199, at *21 (E.D.N.Y. Mar. 5, 2012).

Plaintiff attempts to characterize these statements as promoting Huggies as "safe and comfortable," but that cannot salvage her claim.  *See* Am. Compl. ¶ 34.  The statements have

"nothing to do with . . . safety" at all.  *Leonard*, 2012 WL 764199, at *21.  In any event, "[g]eneral statements about . . . safety" constitute "non-actionable puffery" under New York's consumer laws.  *Id.* at *22 (internal quotation marks omitted); *see also id.* at *21 (citing *Lacoff v. Buena Vista Publ'g, Inc.*, 705 N.Y.S.2d 183, 191 (N.Y. Sup. Ct. 2000)).

Courts within the Second Circuit regularly dismiss consumer claims regarding general assertions of safety.  The court in *Leonard* dismissed "vague" statements that certain baby formula provided "excellent nutrition for growth and development" and that "formula-fed infants receive the highest quality products" as "immaterial" and "not actionable" under the New York consumer laws.  *Id.* at *21 (internal quotation marks omitted).  While safety and pain relief may be desirable attributes of any product, promoting one as generally safe or capable of providing relief from pain is too general a representation to be proven true or false and must be dismissed under Sections 349 and 350.  *See Kommer*, 252 F. Supp. 3d at 312 n.4; *see also Leonard*, 2012 WL 764199, at *22.

The two statements Plaintiff points to in her Amended Complaint regarding "quality time" and "giggl[ing]" time, Am. Compl. ¶ 34 (internal quotation marks omitted), are even more general than the statements at issue in relevant precedent.  *See, e.g.*, *Kommer*, 252 F. Supp. 3d at 312 n.4 (dismissing "statement that the Inserts provide relief from pain" as "nonactionable"); *Kommer v. Ford Motor Co.*, 1:17-CV-296 (LEK/DJS), 2017 WL 3251598, at *3 (N.D.N.Y. July 28, 2017) (dismissing statements about general toughness of vehicle as "non-actionable puffery"); *Leonard*, 2012 WL 764199, at *21 (dismissing statements that baby formula provides "excellent nutrition for growth and development" and that "formula-fed infants receive the highest quality products" as "too vague to mislead a reasonable consumer" (internal quotation marks omitted)).  This Court must follow suit and dismiss Plaintiff's Section 349 and Section 350 claims.

### 2.   No Reasonable Consumer Would Be Deceived Because Diaper Rashes Are A Fact Of Life.

Plaintiff's claims under Sections 349 and 350 must fail because diaper rashes are a "fact of life," and no reasonable consumer could have been misled to believe that a diaper would not cause a diaper rash.  *Solak v. Hain Celestial Grp., Inc.*, 3:17-CV-0704 (LEK/DEP), 2018 WL 1870474, at *6 (N.D.N.Y. Apr. 17, 2018) (citation omitted).  Courts applying this standard focus on the "reasonable consumer, not the least sophisticated consumer."  *Weinstein v. eBay, Inc.*, 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011).  A "reasonable consumer does not lack common sense," *Daniel*, 287 F. Supp. 3d at 193, and does not disregard well-known "fact[s] of life," *Solak*, 2018 WL 1870474, at *6.

Here, Kimberly-Clark did not promise that children wearing Huggies diapers would never develop diaper rashes.  Nor would a reasonable consumer expect such a thing.  Indeed, in the Second Circuit, courts have regularly held that consumers are not so gullible.  For example, a reasonable consumer "would [not] understand a soft drink labeled as 'diet' to be a weight-loss product," *Manuel v. Pepsi-Cola Co.*, 17 Civ. 7955 (PAE), 2018 WL 2269247, at *8 (S.D.N.Y. May 17, 2018), or believe that a "chip-like snack [was] . . . composed primarily of fresh vegetables," *Solak*, 2018 WL 1870474, at *6.  Similarly, a reasonable consumer could not in the exercise of her "common sense" believe that children wearing Huggies diapers somehow would be immune from developing diaper rashes.  *See Daniel*, 287 F. Supp. 3d at 193; *see also Marcus v. AT&T Corp.*, 938 F. Supp. 1158, 1174 (S.D.N.Y. 1996), *aff'd*, 138 F.3d 46, 65 (2d Cir. 1998) (dismissing failure to disclose claim based on common sense of reasonable consumer).  Plaintiff's unsupported allegations "attribute[] to consumers a level of stupidity that [this] Court cannot

countenance and that is not actionable" under Sections 349 and 350. *See Kommer*, 252 F. Supp. 3d at 312 (citation and internal quotation marks omitted).

### 3.      There Is No Connection Between Any Alleged Misconduct And Plaintiff's Purported Injuries.

The cause of Plaintiff's purported injury is clear.  Her son developed a diaper rash because he consistently wears a diaper.  In assessing the sufficiency of a complaint, the Court may consider "the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (quoting *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011)).  That alternative explanation (i.e., that all diapers can cause diaper rashes) is the only plausible explanation here.

On its face the Amended Complaint makes clear that for the multiple days Plaintiff's son had a diaper rash, he was not wearing a Huggies diaper.  *See* Am. Compl. ¶¶ 15-16.  Plaintiff asserts she first noticed the rash when removing the single Huggies diaper she used, but she does not allege she inspected him for the start of a rash before applying the diaper, that it resolved itself after she switched brands, that the doctor recommended changing brands, or anything else that would indicate that her son's rash was anything more than an everyday occurrence. *See Fink*, 714 F.3d at 741.

In an attempt to proffer an alternative explanation for causation, Plaintiff attempts to point to a chemical that a patent, Exh. A at col. 5, line 26, indicates "may" be used on certain Kimberly-Clark products, Am. Compl. ¶¶ 24-25, but the logical leaps Plaintiff asks this Court to take on such thin allegations do not mandate a different result because they are implausible. *See Fink*, 714 F.3d at 741.  Of the 120 paragraphs in the Amended Complaint, only one potentially explains how Plaintiff's baby developed the rash: her doctor "prescribed Nystatin Cream" to treat the rash.  Am.

Compl. ¶ 16.  This allegation does not sufficiently implicate any chemical used in the diaper, let alone Ahcovel, as the cause of the diaper rash.

The Amended Complaint identifies a single ingredient that "may" be in certain Kimberly-Clark products and then asks the Court to ignore common sense and to conclude that it is contained in all Huggies diapers, including the diaper she used.  *See id.* ¶ 25; *see also* Exh. A at col. 5, line 26.  The Patent upon which Plaintiff relies only says that diapers using the described  "improved fastening system," "may . . . be surface treated" with a mixture that includes Ahcovel, while expressly noting that "changes and modifications are contemplated" by the application.  Exh. A at col. 1, line 10-11, col. 5, line 26, col. 16, line 44-45.   As attenuated as that factual assertion is, Plaintiff's theory that Ahcovel "cause[d]" her baby's rash is revealed as even more conclusory, *see* Am. Compl. ¶¶ 24-25, and contradicted by the only factual allegation about the rash—i.e., that it was cured by Nystatin Cream, *see id.* ¶ 16.  Nystatin Cream is an "antifungal agent[]" used to treat fungal rashes, not rashes caused by chemicals.  *See E.R. Squibb & Sons, Inc.*, 870 F.2d at 679; Exh. D.  Though Plaintiff also claims to have "noticed blue crystals" in the diaper after removing it from her son, *see* Am. Compl. ¶ 17, she acknowledges that these "blue crystals" are not Ahcovel and not the cause of the rash, *see id*.  ¶¶ 30-31.  Similarly, the Safety Data Sheet she attaches to her Amended Complaint, *see id.* at Exhibit A, does nothing to salvage her claims.  The Amended Complaint does not even allege any safety measures would be required for the uses identified in the Patent.[2]

---

[2]  Notably, neither of Plaintiff's attachments to the Amended Complaint indicates that Ahcovel is used in any diaper, never mind every one.  Exhibit A to the Amended Complaint does not

Because there is "no connection" between Ahcovel and Plaintiff's son's rash, there can be "no connection" as a matter of law between Kimberly-Clark's alleged "failure to reveal" the presence of Ahcovel in its products and Plaintiff's claimed financial injury of purchasing the diapers—Plaintiff's Section 349 and 350 omission claims must therefore fail. *Morrison*, 2016 WL 5678546, at *12; *see also Stewart v. Ocean State Jobbers, Inc.*, CIVIL ACTION NO. 3:17-CV-1266 (JCH), 2018 WL 379011, at *2-4 (D. Conn. Jan. 10, 2018) (citation and internal quotation marks omitted) (analyzing Section 349 and 350 omission claims together because the standards are "identical" and dismissing for failing to plead a material omission).

Plaintiff's Section 349 and 350 claims also fail because "[n]one of [her] allegations provides any indication that [she] ever saw [any alleged misstatements]" before she purchased the diapers. *Oden*, 330 F. Supp. 3d at 902. Mere identification of the alleged misstatements, as Plaintiff has done here, is insufficient to demonstrate that they are causally connected to any of her injuries, especially where she erroneously alleges Kimberly-Clark should be liable "[w]hether or not [she] viewed the[] . . . representations," Am. Compl. ¶ 35. *See Oden*, 330 F. Supp. 3d at 902-03 (dismissing Section 349 and 350 claims because "[n]one of the[] allegations provide[d] any indication that [p]laintiff ever saw the[] statements"); *see also Quintana v. B. Braun Med. Inc.*, 17-cv-06614 (ALC), 2018 WL 3559091, at *10 (S.D.N.Y. July 24, 2018) (same).

### 4. Plaintiff Lacks Standing To Pursue Injunctive Relief Under Section 349.

Plaintiff lacks standing to pursue injunctive relief pursuant to Section 349 because she is "unable to establish a 'real or immediate threat' of injury." *Daniel v. Tootsie Roll Indus., LLC*, 17 Civ. 7541 (NRB), 2018 WL 3650015, at *6 (S.D.N.Y. Aug. 1, 2018) (quoting *Nicosia v.*

---

identify any product in which it is used, and Exhibit B only relates to "Feminine Care Products."

*Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (internal quotation marks omitted)).  Plaintiff asserts she is now aware of the supposed defect and will not use Huggies diapers again unless Kimberly-Clark "eliminates the defect."  Am. Compl. ¶ 12.  For that reason, Plaintiff cannot as a matter of law "demonstrate that she is likely to be harmed again *in the future in a similar way*" and lacks standing to pursue injunctive relief.  *Nicosia*, 834 F.3d at 239 (emphasis added) (citation omitted); *see also Kommer v. Bayer Consumer Health, a division of Bayer AG*, 710 F. App'x 43, 44 (2d Cir. 2018) (citing *id.*).

That Plaintiff claims she "would be willing to use Huggies again" when it is safe to do so by her standard does not change this result.  Am. Compl. ¶ 12.  In the Second Circuit, a plaintiff's willingness to purchase the product again in the future—free of the alleged defects—is not enough to confer on her standing to pursue injunctive relief.  *See Nicosia*, 834 F.3d at 239.  Because the focus of the Article III inquiry is on whether the plaintiff will be "harmed again in the future," it cannot follow that Plaintiff's intent not to purchase the product until there is no longer a risk confers on her standing to pursue an injunction.  *See id.*  To the extent Plaintiff was deceived by Kimberly-Clark's product, she is now aware of the truth and will not be harmed again in the same way.  *Tootsie*, 2018 WL 3650015, at *6.  She therefore lacks standing to seek an injunction.  *Id.*

**B.      Plaintiff's Strict Liability And Negligence Claims Are Fatally Deficient (Counts IV & V).**

Plaintiff purports to bring strict liability and negligence claims for a manufacturing defect and failure to warn, *see* Am. Compl. ¶¶ 92-113, but these claims, too, must fail.  To sufficiently plead a claim for a manufacturing defect, a plaintiff must allege (1) a defect in the unit she used as compared to all other identical units and (2) the alleged manufacturing defect caused plaintiff's injury.  *See Oden*, 330 F. Supp. 3d at 890.  To sufficiently plead a failure to warn, Plaintiff must allege (1) a duty to warn (2) against dangers resulting from foreseeable uses, and (3) that failure

to do so was the proximate cause of the harm.  *See id.* at 891 (citing *Reed v. Pfizer, Inc.*, 839 F. Supp. 2d 571, 575 (E.D.N.Y. 2012)).  The analysis is the same whether Plaintiff asserts the claim under a theory of strict liability or negligence.  *Savage v. Beiersdorf Inc.*, No. 13–CV–0696 (DLI)(LB), 2013 WL 5532756, at *5 (E.D.N.Y. Sept. 30, 2013) (dismissing failure to warn claim on both strict liability and negligence grounds because the standards are "identical" (citation and internal quotation marks omitted)); *see also Oden*, 330 F. Supp. 3d at 887, 891-94 (dismissing manufacturing defect claim on both strict liability and negligence grounds because the analyses are "functionally equivalent").

Because Plaintiff fails to plead either a defect in the diaper she used that made it different from all other identical units or any connection between the alleged defect and her injuries, the manufacturing defect claim must be dismissed.  The failure to warn claim is fatally deficient for similar reasons:  She alleges no duty to warn of the "danger" of a diaper rash, and she draws no connection between Kimberly-Clark's alleged failure and her child's rash.

### 1.    The Amended Complaint Fails To Plead Essential Elements Of Plaintiffs' Manufacturing Defect Claim And Contradicts Others.

Plaintiff's claim for a manufacturing defect cannot stand because she has failed to allege how the diaper she used was defective, let alone how it was defective as "compared to others in the same product line" and how any alleged defect "ultimately caused [her baby's] injuries."  *Oden*, 330 F. Supp. 3d at 890 (citation and internal quotation marks omitted).  In fact, Plaintiff explicitly alleges that her experience is similar to that of all other nationwide purchasers.  *See* Am. Compl. ¶¶ 18-21, 44, 49.

Plaintiff surmises there was a "defect" in the diaper she used because her child allegedly developed a diaper rash from wearing one Huggies diaper.  *See id.* ¶¶ 14-17.  But this "vague assertion" cannot provide the basis for a manufacturing defect claim because it "fails to place

[Kimberly-Clark] on notice as to what the particular error in the manufacturing process was or, at the very least, what component or components of the [diapers]" were defective. *Oden*, 330 F. Supp. 3d at 890 (citations omitted). Simply put, Plaintiff seeks to hold Kimberly-Clark strictly liable based on a single instance of diaper rash, but no case allows for such liability, especially where Plaintiff has failed to identify a defect.

Her conclusory allegations of a manufacturing flaw—that Kimberly-Clark should be held responsible for diaper rashes because "it does not inspect, test, or maintain . . . instruments" to "ensure that the level of Ahcovel in Huggies is safe," Am. Compl. ¶¶ 24, 28—also cannot salvage her claim. *See Iqbal*, 556 U.S. at 679. Nowhere in Plaintiff's Amended Complaint does she identify, as she must, *see Cavanagh v. Ford Motor Co.*, No. 13–CV–4584(JS)(WDW), 2014 WL 2048571, at *3 (E.D.N.Y. May 19, 2014), what "instruments" Kimberly-Clark uses to apply Ahcovel or adequately allege what role they played in the manufacturing process and where any error occurred, Am. Compl. ¶ 28. These allegations are also belied by the Standard Test Methods regarding Kimberly-Clark's use of Ahcovel in other products that Plaintiff submitted in support of her manufacturing defect claim. *See* Am. Compl. ¶ 27; Exhibit B to Am. Compl. The Methods reveal a detailed, step-by-step process—complete with directions to calibrate certain instruments—by which Kimberly-Clark "determine[s] the amount of Ahcovel" for the products in which it is used. Exhibit B to Am. Compl. at pp. 2-3. Where allegations are contradicted by attachments to the complaint, the allegations are insufficient to overcome a motion to dismiss. *See Koulkina v. City of N.Y.*, 559 F. Supp. 2d 300, 329 (S.D.N.Y. 2008).

Even if she had plausibly alleged a defect (and she has not), the manufacturing defect claim must still fail because the Amended Complaint is "devoid of any allegation" that the diaper she used "deviate[d] in quality and other performance standards from all . . . other identical units."

18

*Cowan v. Costco Wholesale Corp.*, 15-CV-05552 (PKC), 2017 WL 59080, at *3-4 (E.D.N.Y. Jan. 5, 2017) (citation and internal quotation marks omitted).  Because all of her claims are based on a single use of a Huggies diaper, Am. Compl. ¶¶ 14-17, she cannot as a matter of law plead any comparison here.  The customer reviews she cites also do not help her.  Rather than comparing the Huggies diapers to other "identical units" (i.e., other Huggies diapers), *Cowan*, 2017 WL 59080, at *3 (citation and internal quotation marks omitted), according to Plaintiff, the "small sampling" of reviews referenced in the Amended Complaint "began with a brand switch to Huggies and ended with a brand switch away from them," Am. Compl. ¶ 32.  Plaintiff offers no comparison whatsoever between the qualities and attributes of the *Huggies* diaper she used and "others in the same product line."  *Tears v. Boston Sci. Corp.*, 17 Civ. 9793 (AJN), 2018 WL 4760659, at *4 (S.D.N.Y. Sept. 29, 2018) (citation and internal quotation marks omitted).  Because she "fail[s] to allege a . . . manufacturing defect affecting the [Huggies diaper] . . . as compared to other [Huggies diapers]," the claim must be dismissed.  *Oden*, 330 F. Supp. 3d at 890.

Finally, her claim must fail for the additional reason that she has not adequately alleged that any defect was the proximate cause of her baby's injury.  *Cowan*, 2017 WL 59080, at *3 (reciting elements of claim including causation);  *see also Goldin v. Smith & Nephew, Inc.*, No. 12 Civ. 9217(JPO), 2013 WL 1759575, at *2-3 (S.D.N.Y. Apr. 24, 2013) (citing *Barrett v. Black & Decker (U.S.) Inc.*, No. 06 Civ.1970(SCR)(MDF), 2008 WL 5170200, at *11 (S.D.N.Y. Dec. 9, 2008)); *supra* pp. 13-15.

## 2.    **Plaintiff's Failure To Warn Claim Fails As A Matter Of Law.**

Plaintiff cannot state a claim for failure to warn because the Amended Complaint pleads neither a danger nor proximate cause between any danger and her baby's rash.  *See Cavanagh*, 2014 WL 2048571, at *4.  Simply put, Plaintiff "ha[s] not adequately specified the danger that was not warned against;" nor has she "ple[d] sufficient facts [demonstrating] that the lack of [a]

warning was a substantial factor in causing the [rash]." *Am. Guarnatee & Liab. Ins. Co. v. Cirrus Design Corp.*, No. 09 Cv. 8357(BSJ)(HBP), 2010 WL 5480775, at *3 (S.D.N.Y. Dec. 30, 2010); *see also supra* pp. 13-15.

As with her manufacturing defect claim, Plaintiff wholly fails to plead what was wrong with the diaper she used, and again fails to plead how the failure to warn of any alleged defect caused her baby's rash. *See supra* pp. 13-15. Without more, the Amended Complaint boils down to an assertion that Kimberly-Clark should have warned her that diaper rashes might result when babies wear diapers. The law does not require manufacturers to warn of dangers "so apparent and so clearly within common knowledge." *Kerr v. Koemm*, 557 F. Supp. 283, 287 (S.D.N.Y. 1983); *see id.* at 288 (explaining knife manufacturers need not warn that their knives "will . . . cut" and stove manufacturers need not warn that their stoves "will . . . burn" (citation and internal quotation marks omitted)); *see also Pelman v. McDonald's Corp.*, 237 F. Supp. 2d 512, 533, 540-41 (S.D.N.Y. 2003) (dismissing negligence claim because it is "obvious[]" that "eating copious orders of supersized McDonalds' products is unhealthy and may result in weight gain").

## C.   Plaintiff's Breach Of Implied Warranty Of Merchantability Claim Fails (Count III).

To the extent Plaintiff's breach of implied warranty claim is duplicative of her manufacturing defect claim, it must be dismissed for the reasons stated above. *See Oden*, 330 F. Supp. 3d at 895-96 (dismissing breach of implied warranty claim because manufacturing defect claim had been dismissed); *see also Lewis v. Abbott Labs.*, No. 08 Civ. 7480(SCR)(GAY), 2009 WL 2231701, at *6 (S.D.N.Y. July 24, 2009) (same).

On its merits, the implied warranty claim fails as a matter of law because the Amended Complaint does not allege the diaper was "not fit for the ordinary purpose for which it [was] to be used," *Szymczak v. Nissan N. Am., Inc.*, No. 10 CV 7493(VB), 2011 WL 7095432, at *10 (S.D.N.Y. Dec. 16, 2011) (citing *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258 (1995)), or that

the diaper was the "proximate cause" of any of Plaintiff's injuries, *id.* (citation and internal quotation marks omitted).  The "ordinary purpose" of a diaper is to contain a baby's waste, but Plaintiff does not contend that the diaper she used was leaking when she removed it or that it failed in any similar respect.  *Id.* at *11 (dismissing merchantability claims regarding automobiles because "complaint demonstrate[d] plaintiffs ha[d] driven their respective vehicles without incident").  The only "defect" identified is that the diaper allegedly caused her baby's rash.  *See* Am. Compl. ¶¶ 24-25, 89-90.  But even this "[negative] reaction" to the Huggies diaper is insufficient "to establish that the product was unfit for its intended purpose," especially where, as here, there is no allegation whatsoever that the diaper failed to contain her child's waste.  *Viscusi v. Proctor & Gamble*, No. 05–CV–01528 (DLI)(LB), 2007 WL 2071546, at *13 (E.D.N.Y. July 16, 2007) (finding plaintiff's "allergic reaction" to hair coloring product was insufficient "to establish that the product was unfit for its intended purpose of coloring hair").  In any case, her allegations regarding causation are inadequately pled, internally contradictory, and the claim must therefore be dismissed on that basis.  *See Simon v. Smith & Nephew, Inc.*, 18 F. Supp. 3d 423, 427, 429 (S.D.N.Y. 2014) (reaffirming dismissal of breach of implied warranty claim for, *inter alia*, failure to plead causation); *see supra* pp. 13-15.

This claim suffers from the additional fatal flaw that New York law requires plaintiff to plead privity of contract to state a claim for economic damages under an implied warranty of merchantability.  *See Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 296 (S.D.N.Y. 2015).  Because Plaintiff does not allege any privity of contract between herself and Kimberly-Clark, but instead claims she purchased the diapers online on Amazon.com, Am. Compl. ¶ 11, her claim must be dismissed to the extent she claims any economic injuries.  *See Weisblum*, 88 F. Supp. 3d at 296.

**D.      Plaintiff's Fraudulent Misrepresentation And Concealment Claims Fail (VI).**

The standard for pleading fraud is heightened.  "In order to state a claim sounding in fraud under New York law, a plaintiff must set forth facts illustrating '[1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury.'"  *Oden*, 330 F. Supp. 3d at 897 (quoting *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009)).  Plaintiff must also comply with the particularity requirements of Rule 9(b) to state a claim for fraud.  *See id.* (citing Fed. R. Civ. P. 9(b)).  Rule 9(b) requires the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Id.* (quoting *Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197-98 (2d Cir. 2013)).

For the reasons discussed in Sections A.1 and A.2, above, the claim fails at the first element; the Amended Complaint pleads no material misrepresentation or omission.  *See supra* pp. 10-13 (explaining why the statements identified in the Amended Complaint are not materially misleading under Sections 349 and 350).

She also "provide[s] no indication as to whether and, if so, when [she] actually read [any of] the statements . . . and, if [s]he did, whether [s]he justifiably relied on those specific statements to [her] detriment."  *Oden*, 330 F. Supp. 3d at 898.  Indeed, tacitly admitting she did not rely on— or even view the statements—when purchasing the diapers, Plaintiff erroneously alleges her claims should stand "[w]hether or not [she] viewed [any] specific representations."  Am. Compl. ¶ 35.

Also absent from the Amended Complaint is any allegation that Kimberly-Clark acted with an intent to defraud.  The bare assertions that Defendant "knew or should have known" are not sufficient to plead intent, *see id.* ¶¶ 39, 103, 109, 111, and repeating these allegations, *see id.* ¶¶ 64,

80, 102, 113, 116, 120, "in . . . conclusory fashion" does not cure the failure. *See Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, No. 12–CV–5354 (KAM)(RLM), 2014 WL 1311979, at *7 (E.D.N.Y. Mar. 28, 2014) (dismissing with prejudice fraudulent misrepresentation claim because complaint contained only conclusory assertions of intent).

Finally, as explained in Section A, above, the Amended Complaint fails to plead any injury attributable to either a statement made by Kimberly-Clark, *see supra* pp. 10-13, or to Plaintiff's use of the diaper, *see supra* pp. 13-15. The requirements of Rule 9(b) only make the failures more glaring. The Amended Complaint fails to even purport to allege why any statement is fraudulent. *See Winter v. Am. Inst. of Med. Scis. & Educ.*, 242 F. Supp. 3d 206, 226 (S.D.N.Y. 2017); *see also Oden*, 330 F. Supp. 3d at 897-98.

Plaintiff's attempt to plead an omission theory in the alternative cannot salvage the Amended Complaint's failings. To state a claim on an omission theory, Plaintiff must plead "(1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages." *Oden*, 330 F. Supp. 3d at 898 (citations and internal quotation marks omitted). The claim again fails at the first element—"Plaintiff . . . does not adequately plead that [Kimberly-Clark] had a duty to disclose" that diaper rashes may result from wearing diapers. *Id.* at 899. Kimberly-Clark did not possess "superior knowledge" under these circumstances because it is common knowledge that diapers are associated with diaper rashes and therefore no duty arose. *See id.* at 900 (citation and internal quotation marks omitted). Indeed, Plaintiff could not plead that the information purportedly withheld was not otherwise available to her, because the Amended Complaint itself cites to various customer reviews discussing rashes allegedly associated with the Huggies diapers. *See* Am. Compl. ¶¶ 18-22.

Similarly, Plaintiff's fraudulent concealment claim must also fail because she does not allege with any factual support that Kimberly-Clark was "aware that [the diaper she purchased] was defective" and that "[Kimberly-Clark] concealed this information from [her]" as a result. *Kampuries v. Am. Honda Motor Co.*, 204 F. Supp. 3d 484, 493 (E.D.N.Y. 2016).  Indeed, the Toxicological Information and the Standard Test Methods, Exhibits A and B, she submits in support of her claim suggest the opposite—that Kimberly-Clark was aware of risks that could be associated with Ahcovel in certain circumstances and that it thoroughly tested its products for safety.  Plaintiff again cannot draw a connection between any alleged concealment here and her son's rash because she has not plausibly alleged a connection between the diaper she used and the alleged injuries. *See supra* pp. 13-15.  And she has also failed to comply with Rule 9(b)—she does not identify "what the omissions were," "the context of the omissions and the manner in which they misled [her]," and "what [Kimberly-Clark] obtained through the fraud." *Quintana*, 2018 WL 3559091, at *7-8 (citation and internal quotation marks omitted).  The fraudulent concealment claim must therefore be dismissed.

## V.  CONCLUSION

Plaintiff's attempt to turn a single alleged incident of diaper rash into a federal case should be dismissed at the outset.  She has wholly failed to plausibly connect any alleged defect in the Huggies diapers to her son's rash even though she has had ample time to investigate her claims. At bottom, Plaintiff brings this purported nationwide class action based on her one-time use of a Huggies diaper asserting that Kimberly-Clark should have warned her that diapers can cause diaper rashes.  No law requires manufacturers to warn of such obvious "dangers."  For these and the foregoing reasons, Plaintiff's Amended Complaint should be dismissed in its entirety and with prejudice.

Dated:   Los Angeles, California
        January 22, 2019

GIBSON, DUNN & CRUTCHER LLP

By: */s/ Timothy W. Loose*

Timothy W. Loose (*pro hac vice*)
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone:  213.229.7000
Facsimile:  213.229.7520
TLoose@gibsondunn.com

Lissa M. Percopo (*pro hac vice*)
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
Telephone:  202.955.8500
Facsimile:  202.467.0539
LPercopo@gibsondunn.com

Attorneys for Kimberly-Clark Corporation