USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/27/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HEIDY MORALES, *individually and as parent and guardian of J.F., and on behalf of all others similarly situated*,

                     Plaintiff,

-against-

KIMBERLY-CLARK CORPORATION,

                     Defendant.

No. 18-cv-7401 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Heidy Morales ("Plaintiff" or "Morales") brings this putative class action, on behalf of herself, her son J.F., and all those similarly situated, against Defendant Kimberly-Clark Corporation ("Defendant" or "Kimberly-Clark"), alleging physical and financial injuries caused by Defendant's Huggies® brand diapers ("Huggies" or the "Product"). (First Am. Compl. ("FAC"), ECF No. 17.) Plaintiff asserts claims related to (1) violations of New York General Business Law ("G.B.L.") §§ 349 & 350, (2) breach of implied warranty of merchantability, (3) strict products liability, (4) negligence, and (5) fraudulent misrepresentation. (*Id.*)

    Presently before the Court is Defendant's motion to dismiss Plaintiff's First Amended Class Action Complaint ("FAC") pursuant to Rules 9(b), 12(b)(1), and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 19.) For the following reasons, Defendant's motion is GRANTED.

## BACKGROUND

    The below facts are drawn from the FAC and are assumed true for purposes of this motion.

### A. Kimberly-Clark and Huggies

    Kimberly-Clark is a global consumer products manufacturer who develops, designs, manufactures, markets, advertises, and distributes diapers and personal care and cleaning products

to consumers. (FAC ¶¶ 13, 33.) One such product, Huggies, is among the top-selling diapers in the United States. (*Id.* ¶ 33.) Huggies is sold in supermarkets, convenience stores, and pharmacies throughout the country. (*Id.*) Kimberly-Clark promotes Huggies as being safe and comfortable for infants, touting that the diapers will ensure "more quality time with bab[ies]" and "help keep bab[ies] dry so they can giggle a little longer." (*Id.* ¶ 34.)

### B. Plaintiff's Experience with Huggies

On December 10, 2017, Morales ordered a box of Huggies from Amazon.com for $37.59. (*Id.* ¶ 11.) Morales did not use the diapers until February 11, 2018. (*Id.* ¶¶ 11, 14.) Upon finally opening this new box of Huggies, Morales placed a diaper on her infant son, J.F. (*Id.* ¶ 14.) When Morales removed the diaper the next day, she noticed rashes around J.F.'s private areas. (*Id.*) Morales also noticed blue crystals on the surface of the diaper. (*Id.* ¶ 17.) She had not noticed these crystals when she first put the diaper on J.F.[1] (*Id.*)

Although Morales immediately stopped using the diapers, the rash persisted for four days. (*Id.* ¶ 15.) As a result, on February 15, 2018, Morales took J.F. to a doctor. (*Id.*) The doctor told Morales that the rash was a result of the diaper J.F. was wearing. (*Id.* ¶ 16.) He prescribed Nystatin Cream and directed Morales to apply the cream twice a day for ten days. (*Id.*)

### C. Other Customers' Negative Experiences with Huggies

Morales alleges that her experience with Huggies is not unique. (*Id.* ¶ 18.) She provides a handful of negative reviews from other dissatisfied Huggies users who purportedly had similar experiences with diaper rashes after using Huggies. (*Id.* ¶¶ 18-21.) Reported ailments have included rashes, cracks, and blisters. (*Id.*)

---

[1] As Defendant has previously explained, "In HUGGIES diapers, superabsorbent material is mixed with the fluffy diaper padding" and "turns liquid into gel, helping to prevent leak age [sic]." (FAC ¶ 30.)

Kimberly-Clark has responded to these negative reviews by noting that it takes customer concerns seriously and directing dissatisfied customers to contact the company. (*Id.* ¶ 22.) For example, in 2013, Defendant addressed one customer's complaint on Facebook with the following message:

> Hello Huggies Parents,
>
> As some of you may have heard, a concern about one of our diapers causing irritation was raised recently on Facebook. We take any concerns about our diapers very seriously, and we are working directly with this mom to learn more about what happened and how we can help. Nothing is more important than the safety of the little ones who use our products.
>
> Families put their trust in Huggies diapers every day, and all of our Huggies diapers have been thoroughly evaluated to ensure they are safe. As parents ourselves, we know you may have additional questions or concerns.

(*Id.*) Notwithstanding these assurances, Morales alleges that the issues with Huggies persisted. (*Id.*)

### D. The Alleged Issue With Huggies

According to the FAC, Kimberly-Clark uses a chemical additive called Ahcovel in a wide range of products, including Huggies.[2] (*Id.* ¶ 25.) Ahcovel is applied to the surface of products and is designed to absorb urine or blood. (*Id.* ¶ 26.) Ahcovel is not, itself, an absorbent material. (*Id.*) Instead, it interacts with urine or blood to render it more absorbable by absorbent material. (*Id.*)

Notwithstanding its functional use, Ahcovel can be an irritant. (*Id.* ¶ 27.) For example, a Safety Data Sheet for Kimberly-Clark's "Absorbent Core Composite," which contains Ahcovel, explains that "[p]rolonged skin contact" with dust from the composite "may cause mild irritation in

---

[2] For example, Ahcovel is listed in Defendant's patent for "improved fastening systems," which Plaintiff avers is used in all its diapers. (FAC ¶ 25.) The diaper described in that patent is composed of a "backsheet," "topsheet," and "absorbent core," and "may [] be surface treated with about 0.3 weight percent of a surfactant mixture that contains a mixture of AHCOVEL Base N-62 surfactant" among other things. (Decl. of Timothy W. Loose in Supp. of Def.'s Mot to Dismiss, ECF No. 21, Ex. A at col. 5, lines 26-30.) The Court may consider the contents of the patent, as it is incorporated by reference in the FAC. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002). Alternatively, the Court may take judicial notice of the patent. *See Am. Time Exchange, LLC v. Tissot SA*, No. 17-CV-47347 (VM), 2017 WL 4712634, at *1 n.1 (S.D.N.Y. Sept. 27, 2017) ("[A] court 'may properly take judicial notice of official records of the United States Patent and Trademark Office . . . .'").

sensitive individuals." (*Id.* Ex. A.) And in a Standard Test Methods document prepared "to determine the amount of Ahcovel" to use in Kimberly-Clark's feminine care products, testers noted that "[w]hen Ahcovel add-on is too high, skin irritation issues may develop." (*Id.* Ex. B.)

Although Kimberly-Clark is apparently aware of Ahcovel's irritative effects, it has allegedly failed to ensure safe levels of Ahcovel in Huggies. (*Id.* ¶ 28.) Morales contends, without support, that Kimberly-Clark purportedly does not inspect, test, or maintain the instruments that dispense Ahcovel, either during installations and modifications of the instruments or during regular intervals over the instruments' lifetime of use. (*Id.*) As a result, the volume of Ahcovel sprayed on Huggies is allegedly not monitored, leading to skin irritations in infants using the diapers. (*Id.* ¶ 29.)

Kimberly-Clark has previously vouched for the safety of the "superabsorbent materials" used in Huggies, noting, among other things, that the "safety of the superabsorbent material has been proven in more than 450 consumer safety tests." (*Id.* ¶ 30.) Plaintiff maintains that this explanation "misdisrect[s]" from the real issue: the cause of rashes produced by Huggies is the material that makes urine absorbable, rather than the actual "superabsorbent materials." (*Id.* ¶ 31.) In other words, while the skins of Huggies wearers do not normally come into contact with the absorbents, they do contact the Ahcovel that is sprayed on the outer lining. (*Id.*) As such, the use of Ahcovel in Products may explain the volume of complaints related to Huggies. (*Id.* ¶ 32.)

Morales states that she, as well as reasonable consumers, would have expected Huggies to be safe and comfortable for infants. (*Id.* ¶ 35.) Although diapers may cause mild rashes on occasion, Morales contends that no reasonable consumer would have expected "extreme, prolonged, painful rashes that lead to doctors' visits"; as she further explains, the numerous complaints related to Huggies reveal that the problem is out of the ordinary. (*Id.* ¶ 36.)

Morales indicates she was misled into purchasing an unsafe product that did not offer the qualities for which it had been advertised. (*Id.* ¶ 37.) Morales states that she would not have purchased Huggies had she known it carried these dangers. (*Id.* ¶ 40.) And because she is no longer certain of the Product's safety, her past purchases are unusable. (*Id.* ¶ 43.) Morales, however, would be willing to use Huggies again if Kimberly-Clark eliminates the above-alleged issues. (*Id.* ¶ 12.)

## LEGAL STANDARDS

### I. Rule 12(b)(1)

A challenge to a federal court's subject matter jurisdiction is properly raised by way of a 12(b)(1) motion. *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87-88 (2d Cir. 2006). Without jurisdiction, the Court lacks the "power to adjudicate the merits of the case." *Carter v. HealthPort Tech., LLC*, 822 F.3d 47, 55 (2d Cir. 2016). It is well-settled that the "plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)). A plaintiff's lack of standing is grounds for dismissal under Rule 12(b)(1). *Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 560 (S.D.N.Y. 2016).

### II. Rule 12(b)(6)

Under Rule 12(b)(6), courts must assess whether a complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). A court must accept all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but a court is "'not bound to accept as true a legal conclusion couched as a factual allegation'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id.* at 662. A claim is facially plausible when the facts pleaded allow a court to make "a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### III. Rule 9(b)

While the rules of federal pleading typically require a "short and plain statement," *see* Fed. R. Civ. P. 8, fraud claims have heightened pleading requirements. *See* Fed. R. Civ. P. 9(b). To meet Rule 9(b)'s pleading standard, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

## DISCUSSION

### I. Plaintiff's Claims Under G.B.L. §§ 349 and 350.

Defendant primarily moves to dismiss Plaintiff's G.B.L. claims on two bases. *First*, Defendant contends that Plaintiff's Section 349 claim for injunctive relief fails because Plaintiff lacks standing to pursue an injunction. (Defs. Mem. of Law in Supp. of Mot. to Dismiss ("Def. Mot."), ECF No. 20, at 15-16.) Specifically, Defendant maintains that, even though Plaintiff claims she would be willing to use Huggies again, such willingness does not establish that she would be harmed again in the future. (*Id.* at 16.) *Second*, Defendant argues that Plaintiff has failed to establish that Defendant alone possessed, and failed to provide, material information regarding Huggies'

propensity to cause diaper rashes.  (Def.'s Reply in Supp. of Mot. ("Def. Reply"), ECF No. 23, at 1-4.)  The Court considers both grounds for dismissal below.[3]

### A. Plaintiff's Standing to Seek Injunctive Relief Under G.B.L. § 349

To have standing under Article III of the Constitution, a plaintiff must establish three elements: "(1) 'the plaintiff must have suffered an injury in fact,' i.e., 'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical'; (2) 'there must be a causal connection between the injury and the conduct complained of'; and (3) 'it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'"  *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  A plaintiff seeking to represent a class must personally have standing.  *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (citing *Lewis v. Casey*, 518 U.S. 343, 357 (1996)); *Izquierdo v. Panera Bread Co.*, No. 18-CV-12127 (VSB), 2020 WL 1503557, at *3 (S.D.N.Y. Mar. 30, 2020) (quoting *Fort Worth Emps. Ret. Fund v. J.P. Morgan Chase & Co.*, 862 F. Supp. 2d 322, 331 (S.D.N.Y. 2012)).

To satisfy the injury requirement when seeking injunctive relief, "a plaintiff cannot rely on past injury alone."  *Buonasera*, 208 F. Supp. 3d at 564 (citing *City of Los Angeles v. Lyons*, 416 U.S. 95, 1010 (1983)).  Rather, a plaintiff must establish a "real or immediate threat" of injury, *i.e.*, that "she is likely to be harmed again in the future in a similar way."  *Nicosia*, 834 F.3d at 239 (citing *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344-45 (2d Cir. 1998).  Mere "allegations of possible future injury are not sufficient"; the "injury must be certainly impending."  *Izquierdo*, 2020 WL 1503557 at *4 (quoting *Daniel v. Tootsie Roll Indus., LLC*, No. 17 CIV. 7541 (NRB), 2018 WL

---

[3]  Defendant also challenges whether Plaintiff has plausibly alleged causation.  (Def. Mot. 13-15.)  Because, as explained below, the Court concludes that Plaintiff has failed to plausibly allege materially misleading conduct, it does not reach this issue.

3650015, at *6 (S.D.N.Y. Aug. 1, 2018)); *see also Am. Civil Liberties Union v. Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) ("The Supreme Court has 'repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that [a]llegations of *possible* future injury are not sufficient'" (quoting *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013))).

A survey of authority in this Circuit indicates that it remains unsettled whether plaintiffs "seeking injunctive relief for consumer deception will be able to demonstrate standing where, as here, they allege they would buy the products in the future if not mislabeled." *Mancuso v. RFA Brands, LLC*, No. 18-CV-6807L, 2020 WL 1846982, at *5 (W.D.N.Y. Apr. 13, 2020) (internal citations and quotations omitted); *Podpeskar v. Dannon Co., Inc.*, No. 16-cv-8478 (KBF), 2017 WL 6001845, at *4 n.2 (S.D.N.Y. Dec. 3, 2017) (collecting cases). Some courts have taken the view that conditional promises to purchase a product are insufficient to establish standing. *See, e.g., Lugones v. Pete and Gerry's Organic, LLC*, No. 19 Civ. 2097 (KPF), 2020 WL 871521, at *6 (S.D.N.Y. Feb. 21, 2020) (concluding that plaintiffs failed to allege standing where they alleged they "would only consider purchasing [the product] in the future if" changes were made by defendant); *Gonzalez v. Costco Wholesale Corp.*, No. 16-CV-2590 (NGG) (JO), 2018 WL 4783962, at *6 (E.D.N.Y. Sept. 29, 2018) (concluding that allegations that plaintiff "would resume purchasing the Products in the future" if defendants' misleading conduct was remedied were "insufficient to establish a likelihood of future injury"); *Buonasera*, 208 F. Supp. 3d at 563-64 (concluding that plaintiff failed to establish standing to seek injunctive relief where he alleged "he would consider purchasing the products in the future if they were" changed). Other courts, including this one, have concluded that, because plaintiffs "in a consumer protection suit ha[ve] standing to seek injunctive relief regardless of any promise to purchase the products in questions in the future," they "certainly ha[ve] standing when they, as is the case here, assert that they will purchase a product in the future

8

if" it is altered. *Petrosino v. Stearn's Prods., Inc.*, No. 16-CV-7735 (NSR), 2018 WL 1614349, at *4 (S.D.N.Y. Mar. 30, 2018); *Campbell v. Freshbev LLC*, 322 F. Supp. 3d 330, 337-38 (E.D.N.Y. 2018) (holding that plaintiffs had standing if they pled a future desire to buy defendant's product); *see also Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018) (holding that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling" because "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to").

  Here, Plaintiff indicates that she would not have purchased Huggies if she were aware that it would allegedly cause "visible rashes that required medical attention." (FAC ¶ 11.) She nevertheless avers that she would be willing to use Huggies again if she were assured that any purported defects were identified and eliminated. (*Id.* ¶ 12.) These allegations are enough for Plaintiff to establish her standing to seek injunctive relief. As it did in *Petrosino*, the Court concludes that, *at the very least*, standing under G.B.L. § 349 is sufficiently established by allegations that Plaintiff would purchase a product again in the future if changes were implemented by a defendant. To hold otherwise "would effectively neuter any attempt at seeking class-wide injunctive relief." *Petrosino*, 2018 WL 1614349 at *5 n.3; *see also Belfiore v. Procter & Gamble Co.*, 311 F.R.D. 29, 67 (E.D.N.Y. 20150 ("To hold [that plaintiff lacks Article III standing] would denigrate the New York consumer protection statute, designed as a major support of consumers who claim to have been cheated. The only way a consumer could enjoin deceptive conduct would be if he were made aware of the situation by suffering injury. But once the consumer learned of the deception, he would voluntarily abstain from buying and therefore could no longer seek an injunction.").

The Second Circuit's decision in *Nicosia v. Amazon.com, Inc.*, does not warrant a different outcome. In *Nicosia*, plaintiff had moved for a preliminary injunction requesting (1) remedial notices be sent to past purchasers of a weight loss product containing a stimulant called sibutramine, and (2) measures be put in place to prevent future sales of products containing sibutramine. 834 F.3d at 238. The district court concluded that plaintiff lacked standing to seek an injunction for failure to establish he was in danger of being wronged again, and the Second Circuit affirmed. *Id.* In reaching this conclusion, the Court determined that "[e]ven assuming [plaintiff's] past purchases . . . resulted in injury and that he may continue to suffer consequences as a result, he has not shown that he is likely to be subjected to further sales by Amazon of products containing sibutramine." *Id.* at 239. Critical to the Second Circuit's reasoning was that defendant "ha[d] ceased selling [the offending product] on its website," and plaintiff "ha[d] failed to allege he intend[ed] to use Amazon in the future to buy *any* products . . . ." *Id.* Thus, contrary to Defendant's position that "a plaintiff's willingness to purchase [a] product again in the future—free of alleged defects—is not enough to confer . . . standing to pursue injunctive relief" (Def. Mot. 16), *Nicosia* seemingly contemplates standing in such circumstances. *See Nicosia*, 834 F.3d at 239; *see also Kommer v. Bayer Consumer Health, a division of Bayer AG*, 710 F. App'x 43, 44 (2d Cir. 2018) (finding no standing because plaintiff failed "to allege that he intends to [purchase the offending product] in the future").

The Court now turns to the merits of Plaintiff's G.B.L. claims.

**B.  Merits of Plaintiff's G.B.L. Claims**

"Section 349 of the GBL provides a cause of action for any person injured by '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service.'" *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting G.B.L. § 349(a), (h)). To state a G.B.L. § 349 claim, a plaintiff must allege that (1) defendant's acts were

10

consumer oriented; (2) the acts or practices were "deceptive or misleading in a material way"; and (3) plaintiff was injured as a result. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995); *accord Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009); *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000). Courts apply this same standard to claims under G.B.L. § 350. *Goshen v. Mut. Life Ins. Co. of N.Y.*, 746 N.Y.2d 314, 324 n.1 (2002) (alterations omitted).

Courts use an "objective standard for determining whether acts or practices are materially deceptive or misleading 'to a reasonable consumer acting under the circumstances.'" *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014) (quoting *Oswego*, 85 N.Y.2d at 25). Where, as here, the allegations of materially misleading or deceptive conduct pertain to omissions, the defendant alone must "possess[] [the] material information that is relevant to the consumer and fail[] to provide this information." *Braynina v. TJX Companies, Inc.*, No. 15 Civ. 5897 (KPF), 2016 WL 5374134, at *4 (S.D.N.Y. Sept. 26, 2016) (quoting *Oswego*, 85 N.Y.2d at 26). A defendant's failure to reveal facts of which even it was unaware will not lead to liability under G.B.L. § 349. *See In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016). Although typically a question of fact, *see Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) (citing *Sims v. First Consumers Nat. Bank*, 303 A.D.2d 288, 289 (1st Dep't 2003)), "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).

Here, the crux of Plaintiff's complaint is that Defendant "failed to warn consumers that [Huggies] carried the unreasonable risk" of the severe diaper rash that her son experienced.[4] (FAC ¶ 38.) Plaintiff contends that this failure to warn amounted to a materially misleading omission under G.B.L. §§ 349-350. (Pl. Mem. in Opp. to Def. Mot. ("Pl. Opp."), ECF No. 22, at 4.) However, to the extent such a defect was present in Plaintiff's diaper, the FAC does not plausibly allege that Defendant had any knowledge of it, such that the Court cannot conclude or infer that Defendant alone possessed, and, indeed, omitted, the material information that the FAC details. Plaintiff nevertheless attempts to impute knowledge by asserting that Defendant "does not inspect, test, or maintain the instruments" that purportedly apply Ahcovel to Huggies. (FAC ¶ 28.) As an initial matter, this allegation appears to be, at least somewhat, belied by Exhibit B to the FAC, which details the procedures Defendant employs in testing and applying Ahcovel to its feminine-care products. (*Id.* Ex. B at 2-3.) In any event, such allegations are nothing more than naked and conclusory assertions that this Court cannot consider in assessing the viability of the FAC. *See Iqbal*, 556 U.S. at 677-78. When stripped of these facts, the FAC is devoid of materially misleading conduct that rises above the speculative level.[5]

---

[4] Defendant cites to several cases that stand for the proposition that reasonable consumers are familiar with, and therefore are not misled by, "facts of life," which ultimately includes diaper rashes. (Def. Reply 1-4 (citing, *inter alia*, *Solak v. Hain Celestial Grp., Inc.*, 3:17-CV-0704 (LEK/DEP), 2018 WL 1870474, at *4 (N.D.N.Y. Apr. 17, 2018); *Manuel v. Pepsi-Cola Co.*, No. 17 Civ. 7955 (PAE), 2018 WL 2269247, at *8 (S.D.N.Y. May 17, 2018)). Although diaper rashes, in general, may constitute facts of life that would not need to be disclosed to a reasonable consumer, Defendant's contentions here ultimately miss the mark. Accepted as true and drawing all reasonable inferences in her favor, Plaintiff's allegation is not merely that J.F. experienced a diaper rash. Instead, Plaintiff pleads that her son experienced an atypically severe rash necessitating medical treatment. (FAC ¶¶ 11, 14-16.) Whether Plaintiff can proffer sufficient allegations that nudge her consumer deception claims across the line from conceivable to plausible remains to be seen. But the Court cannot conclude that, as a matter of law, *severe rashes*—to the extent they are alleged—are a "fact of life" for parents and their children. Thus, to the extent Defendant relies on this line of "fact of life" case as a basis for dismissal, the Court finds them unpersuasive at this juncture.

[5] Although Plaintiff is correct that she may plead facts upon information and belief "where the facts are peculiarly within the possession and control of the defendant," *see Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), this is not a license for her to support her claims through wholly conclusory assertions. *See Cellucci*

The consumer complaints regarding Defendant's diapers identified in the FAC do not alter the Court's conclusion at this juncture. That consumers have raised complaints on online forums does not, alone, give rise to an inference that Defendant failed to disclose material information.[6] *See Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676(ADS)(WDW), 2012 WL 764199, at *24 (E.D.N.Y. Mar. 5, 2012) (observing that "the mere existence of product complaints does not in and of itself prove that the product was unsafe" in its assessment of whether defendant's failure to disclose such complaints constituted a material omission). Nor, in this Court's view, do the two alleged responses to consumer complaints by Defendant support an inference that it knew of and/or failed to disclose material information about its product.[7]

---

*v. O'Leary*, No. 19-CV-2752 (VEC), 2020 WL 977986, at *1 (S.D.N.Y. Feb. 28, 2020) ("Allegations based on 'information and belief' are accepted only if they are non-conclusory and pertain to 'facts [that] are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.'"); *Boehm v. SportsMem, LLC*, No. 18-CV-556 (JMF), 2019 WL 3239242, at *2 n.1 (S.D.N.Y. July 18, 2019) (explaining that a plaintiff may allege facts upon information and belief "where the facts are peculiarly within the possession and control of defendant," but "'such allegations must be accompanied by a statement of the facts upon which the belief is founded,' and cannot rest on pure 'conjecture and speculation.'" (quoting *Arista Records*, 604 F.3d at 120; *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 527 (S.D.N.Y. 2013)).

[6] *Rodriguez v. Hanesbrands Inc.*, No. 17-CV-1612 (DLI), 2018 WL 2078116 (E.D.N.Y. Feb. 20, 2018), *adopted by* 2018 WL 1686105 (E.D.N.Y. Mar. 30, 2018), does not hold otherwise. In *Rodriguez*, plaintiff had plausibly alleged that defendant made deceptive representations about the effectiveness of its hosiery products. 2018 WL 2078116 at *2-3. Plaintiff then used "anecdotal evidence"—to wit, Amazon.com customer reviews—to supplement the plausible allegations that defendant's affirmative representations were misleading. *Id.* at *4. Here, by contrast, although Plaintiff proffers customer reviews regarding diaper rashes experienced while using Huggies, Defendant did not affirmatively represent that Huggies does not cause or prevent diaper rashes, and Plaintiff has not plausibly established Defendant's knowledge of any alleged defect or issue.

[7] One such response reproduced in the FAC—Defendant's description of the safety of the "superabsorbent materials" used in Huggies (FAC ¶¶ 30-31.)—plainly cannot support an inference of knowledge (or intent, as it relates any fraud-based claims discussed below). Notably, Defendant was not responding to consumer complaints about alleged rashes caused by Huggies; rather, Defendant was responding to a single 2015 "eRumor" that Huggies "could result in second degree chemical burns." *See* Rich Ruhler, *Second Degree Chemical Burns from Huggies Diapers-Unproven!*, TruthorFiction.com (Mar. 17, 2015), https://www.truthorfiction.com/huggies-diaper-burns/#.UtAjnJ5dV8E (cited in FAC ¶ 30). Although Plaintiff attempts to equate these alleged "second degree chemical burns" to the types of rashes she alleges occurred in J.F. (FAC ¶ 31), a comparison of information in the source cited by Plaintiff and her actual allegations does not remotely support that inference. The other response detailed in the FAC, from 2013, merely indicates that Defendant was working with a parent to understand her concern that "one of [Defendant's] diapers" had caused an irritation. (*Id.* ¶ 22.) Without more, this factual predicate is wholly inadequate to raise an inference of knowledge or intent.

Overall, as currently pled, Plaintiff fails to plausibly allege a materially misleading omission that would deceive a reasonable consumer. The Court therefore GRANTS Defendant's motion to dismiss Plaintiff's claims, without prejudice.

## II. Plaintiff's Product Liability Claims

Plaintiff brings strict liability and negligence claims related a manufacturing defect in Huggies and a failure to warn of alleged dangers in using the diapers. (FAC ¶¶ 92-113.) Because "[u]nder New York law, strict liability and negligence are functionally equivalent," *Cosh v. Atrium Med. Corp.*, No. 1:18-cv-08335 (ALC), 2020 WL 583826, at *2 (S.D.N.Y. Feb. 6, 2020) (collecting cases); *Tears v. Boston Sci. Corp.*, 344 F. Supp. 3d 500, 509 (S.D.N.Y. 2018) (same), the Court will analyze Plaintiff's strict liability and negligence claims using the same standards.

### A. Manufacturing Defect Claims

Under New York law, "[t]o plead and prove a manufacturing flaw under either negligence or strict liability, [a] plaintiff must show that a specific product unit was defective as a result of 'some mishap in the manufacturing process itself, improper workmanship, or [] defective materials [] used in construction." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (quoting *Caprara v. Chrysler Corp.*, 52 N.Y.2d 114, 129 (1981)). The defect must also be the cause of plaintiff's injury. *Id.* "[A] manufacturing flaw exists when the unit in question deviates in quality and other performance standards from all of the other identical units." *Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 890 (S.D.N.Y. 2018) (quoting *Colon*, 199 F. Supp. 2d at 85). If a product cannot be inspected, a plaintiff can plead a manufacturing defect based on circumstantial evidence. *Tears*, 344 F. Supp. 3d at 511 (citing *Speller ex rel. Miller v. Sears, Roebuck & Co.*, 100 N.Y.2d 38, 41 (2003)). In such cases, the plaintiff must allege sufficient facts to establish that "the product did not perform as intended and the possibility of other causes has been excluded."

*Williamson v. Stryker Corp.*, No. 12 Civ. 7083(CM), 2013 WL 3833081, at *5 (S.D.N.Y. July 23, 2013) (citing *Sanchez v. Stanley-Bostitch, Inc.*, No. 98 Civ. 0494(LMM), 2000 WL 968776, at *2 (S.D.N.Y. July 13, 2000)); *see also Speller*, 100 N.Y.2d at 41 (citing *Halloran v. Va. Chems.*, 41 N.Y.2d 386, 388 (1977)) ("In order to proceed in the absence of evidence identifying a specific flaw, a plaintiff must prove that the product did not perform as intended and exclude all other causes for the product's failure that are not attributable to defendants.").

Here, Plaintiff alleges that after a single use of Defendant's product, her son developed a rash that persisted for several days. (FAC ¶¶ 15-16.) Although her doctor may have opined that the rash stemmed from the diaper J.F. was wearing, Plaintiff has failed to proffer sufficient, non-conclusory facts that support a reasonable inference that this single diaper's *manufacturing* deviated from identical units or, critically, that all other causes of J.F.'s rash have been excluded. When also noting that Plaintiff's only allegation regarding the manufacturing process is wholly conclusory and somewhat undermined by documents attached to the FAC, the Court finds no basis to conclude that Plaintiff's manufacturing defect claim is anything other than speculative *See Goldin v. Smith & Nephew, Inc.*, No. 12 Civ. 9217(JPO), 2013 WL 1759575, at *3 (S.D.N.Y. Apr. 24, 2013) (concluding that plaintiff failed to allege a manufacturing defect in the absence of any facts regarding the manufacturing process and failed to establish the absence of another possible cause for her product's failure). The Court GRANTS Defendant's motion to dismiss Plaintiff manufacturing defect claims, without prejudice.

### B. Failure to Warn

"To prevail on a failure to warn claim, a plaintiff must prove, '(1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was a proximate cause of the harm.'" *Reed v. Pfizer, Inc.*, 839

F. Supp. 2d 571, 575 (E.D.N.Y. 2012) (quoting *State Farm Fire & Cas. Co. v. Nutone, Inc.*, 426 F. App'x 8, 10 (2d Cir. 2011)); *see also Surre v. Foster Wheeler LLC*, 831 F. Supp. 2d 797, 801 (S.D.N.Y. 2011) ("A 'manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known.'" (quoting *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 238 (1998))). The duty to warn "arises only where there is actual or constructive notice of a danger[] and is thus coextensive with the negligence standard." *Lyman v. PetSmart, Inc.*, No. 16 Civ. 04627 (JCM), 2018 WL 4538908, at *10 (S.D.N.Y. Sept. 21, 2018) (citing *Gervis v. Target Corp.*, No. 16-cv-380 (GRB), 2017 WL 3669009, at *5 (E.D.N.Y. July 20, 2017)).

Here, Plaintiff's failure to warn claim is essentially premised on the same omission theory underlying her G.B.L. claims. (*See* Pl. Opp. 20-21.) And for the same reasons warranting dismissal of the G.B.L. claims, Plaintiff's failure to warn claim must likewise fail. At bottom, Plaintiff does not set forth sufficient, non-conclusory factual allegations that indicate that Defendant had actual or constructive notice of a defect in the single Huggies diaper that she used, let alone that any failure to warn was the proximate cause of her harm. The Court therefore GRANTS Defendant's motion to dismiss Plaintiff's failure to warn claim, without prejudice.

### III. Plaintiff's Breach of Implied Warranty of Merchantability Claim

Plaintiff advances a claim for a breach of implied warrant of merchantability. (FAC ¶¶ 86-91.) Defendant contends that such claims must be dismissed for the same reasons that proved fatal to her manufacturing defect and failure to warn claims. (Def. Mot. 20.) The Court agrees.

To state a claim for breach of implied warranty of merchantability, a plaintiff must allege that "a defect in the product was a substantial factor in causing the injury and . . . the defect complained of existed at the time the product left the manufacturer or entity in the line of distribution

16

being sued." *DiBartolo v. Abbott Labs.*, 914 F. Supp. 2d 601, 627 (S.D.N.Y. 2012). The alleged defect may arise from "a manufacturing flaw, improper design, or a failure to provide adequate warnings regarding use of the product." *Adesina v. Aladan Corp.*, 438 F. Supp. 2d 329, 345 (S.D.N.Y. 2006) (quoting *Langer v. Well Done, Ltd.*, 11 Misc. 3d 1056(A), 815 N.Y.S.2d 494 (Table), at *2 (N.Y. Sup. Ct. N.Y. Cty. 2006)). "This standard does not require that the goods be perfect, or that they fulfill [a] buyer's every expectation; it requires only that the goods sold be of a minimal level of quality." *Green v. Covidien LP*, No. 18 Civ. 2939 (PGG), 2019 WL 4142480, at *5 (S.D.N.Y. Aug. 30, 2019) (quoting *Caronia v. Philip Morris USA, Inc.*, 715 F.3d 417, 433 (2d Cir. 2013)).

Here, Plaintiff essentially accedes in her opposition that her implied warranty of merchantability claim is premised on the same factual ground as her product liability claims. (*See* Pl. Opp. 21.) And as the Court has already concluded, Plaintiff has failed to plausibly allege either a manufacturing defect or a failure to warn claim. Accordingly, dismissal of her claim is warranted at this time. *See Goldin*, 2013 WL 1759575 at *5 (dismissing breach of implied warranty claim where "Plaintiff ha[d] not adequately pleaded facts in support of her allegation that [the product at issue] was defective."). The Court GRANTS Defendant's motion to dismiss Plaintiff's breach of implied warranty claims related to physical injuries, without prejudice.[8]

## IV. Plaintiff's Fraudulent Misrepresentation/Concealment Claim

Defendant seeks dismissal of Plaintiff's fraudulent misrepresentation/concealment claim on the basis that, *inter alia*, Plaintiff has failed to plead facts that establish Defendant's intent to defraud.

---

[8] Plaintiff concedes that her implied warranty of merchantability claim cannot be maintained as to any economic harm she suffered because she cannot plead privity of contract. *See Wick v. Wabash Holding Corp.*, 801 F. Supp. 2d 93, 108 (W.D.N.Y. 2011) ("With regard to Plaintiff's claimed breach of implied warranty, absent any privity of contract between Plaintiff and Defendant, such claim cannot be sustained as a matter of law except to recover for personal injuries." (citing *Jaffee Assocs. v. Bilsco Auto Serv., Inc.*, 58 N.Y.2d 993, 995 (1983)). As such, the Court GRANTS, with prejudice, Defendant's motion to dismiss Plaintiff's implied warranty claim to the extent it relates to economic harm.

17

(Def. Mot. 22-23.)   In response, Plaintiff contends that intent can be inferred based on "the combination of (1) Defendant's awareness of the dangers of Ahcovel . . . and (2) its awareness of the injuries caused by [Huggies]."  (Pl. Opp. 24.)  As detailed below, the Court concludes that said inference of intent is lacking.

To state a claim for fraudulent misrepresentation under New York law, a plaintiff must show "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff[] thereby, (3) the plaintiff[] reasonably relied upon the representation, and (4) the plaintiff[] suffered damage[s] as a result of [his or her] reliance." *Nealy v. U.S. Surgical Corp.*, 587 F. Supp. 2d 579, 585 (S.D.N.Y. 2008) (quoting *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 326 (1st Dep't 1996)). Even if intent can be demonstrated by inference, *see O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991), it is still incumbent on the plaintiff to "plead the factual basis which give rise to a strong inference of fraudulent intent."  *Weaver v. Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997).

Here, the FAC lacks any non-conclusory contention that plausibly establishes Defendant's intent to deceive consumers about Huggies.  As previously explained, there is no indication that Defendant was aware that, to the extent it is used in Huggies, Ahcovel was improperly or excessively applied.  Plaintiff also relies heavily on the alleged online customer reviews to establish knowledge and scienter.  But, *without more*, the mere existence of these online consumer complaints does not raise a reasonable, or even plausible, inference that Defendant intended to deceive consumers about the existence of a defect in its products.  *Cf. Ponzio v. Mercedes-Benz USA, LLC*, No. 18-12544, 2020 WL 1183733, at *29 (D.N.J. Mar. 11, 2020e) (acknowledging that merely alleging consumer complaints posted on a defendant's consumer website were "insufficient to establish knowledge, *by themselves*," but explaining that allegations of consumer "complaints made directly to [defendants]

18

and complaints made on public forums" and allegations that "[d]efendants track the websites/forums where these complaints are found," when coupled with other information, could establish knowledge); *In re Nexus 6P Prods. Liability Litig.*, 293 F. Supp. 3d 888, 909 (N.D. Cal. 2018) ("[A] handful of complaints do not, by themselves, plausibly show that [defendants] had knowledge of the defects and concealed the defects from customers.").

As Plaintiff does not otherwise plead any other facts that establish, or allow this Court to reasonably infer, that Defendant possessed the requisite intent to deceive consumers, she fails to meet her pleading burden. The Court therefore GRANTS Defendant's motion to dismiss Plaintiff's fraudulent representation and omission claims, without prejudice.

## V. Leave to Amend

It is within the Court's discretion to *sua sponte* grant leave to amend. *See Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 106 (2d Cir. 1998); *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008). When exercising this discretion, courts will consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility. *Local 802, Associated Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, the Court will grant Plaintiff leave to file a second amended complaint as to those claims not dismissed with prejudice. Specifically, notwithstanding the above explained deficiencies, Plaintiff could potentially plead facts that cure her complaint's defects. To be sure, Plaintiff has high hurdles to overcome. Nevertheless, leave to amend in this case would not necessarily be futile at this juncture. Furthermore, as this case is still in its infancy, there would be minimal prejudice to Defendant in permitting Plaintiff to make one final amendment.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's First Amended Class Action Complaint is GRANTED. The Court, however, grants Plaintiff leave to file a Second Amended Class Action Complaint regarding those claims not dismissed with prejudice. If she chooses to do so, Plaintiff has until July 27, 2020 to file her Second Amended Class Action Complaint. Defendant is then directed to answer or otherwise respond by August 27, 2020. Failure to file a Second Amended Class Action Complaint within the time allowed, and without good cause to excuse such failure, will result in the dismissal of Plaintiff's claims with prejudice.

The Clerk of Court is directed to terminate the motion at ECF No. 19.

Dated: May 27, 2020
       White Plains, New York

SO ORDERED.

_____
NELSON S. ROMÁN
United States District Judge